PAUL SIMMONS, a minor by his next friend, Michael Simmons, and MICHAEL SIMMONS, individually, v. RICHARDSON VARIETY STORES, a corporation of the State of Delaware.

(*December* 31, 1957.)

CAREY, J., sitting.

*Joseph A. L. Errigo* for plaintiffs.

*William Prickett* and *William Prickett, Jr.,* for defendant.

Superior Court for New Castle County, No. 1019, Civil Action, 1956.

CAREY, J.:

This case involves the liability of a retailer for injuries to a child caused by an alleged defect in a toy top not manufactured by the seller. Some of the facts herein stated are not supported by any affidavit, deposition or admission, but are treated as true since they are set forth in the briefs and have been so accepted by counsel.

Defendant operates several retail stores in the Wilmington area, selling a widely diversified variety of goods very similar to those sold in five-and-dime stores. The adult plaintiff saw some mechanical tops in a bin in one of these stores, selected one and paid the clerk for it. He gave it to his infant son but it appears that several other children also played with it. The child ultimately injured was about four and one-half years old at the time of the accident which gives rise to this suit.

The top was in two parts, the bottom or spinning part was made of metal, and the upper or rotator part was made of wood. In the center of the rotator was a spring which, when wound, furnished the driving force for the spinning part of the top. The upper end of this spring was fastened to a metal ring which was pushed down into the wood to hold the spring in place. The infant plaintiff, about three or four months after his father had purchased the top, was playing with it when the metal ring disengaged itself from the wood, thus releasing the end of the spring, which struck the child in the eye causing the injuries complained of.

Defendant's motion for summary judgment is based upon the proposition that defendant is not liable for the injuries thus caused.

██ Despite a contrary argument by plaintiffs' counsel, I am of the opinion that defendant's liability is not that of a manufacturer. It is clear that the top was not made by the defendant, but was purchased by it from an independent manufacturer. It is likewise admitted that there was no actual representation of any kind made to the purchaser to indicate that it was manufactured by the defendant. Its name was not on the top; in fact, there was no name on it. The mere absence of the manufacturer's name does not constitute a representation that the top was made by the defendant. The record suggests no actual or implied representation which would justify the present application of the rule governing a manufacturer's liability. This case is thus distinguishable in that feature from *Gittelson v. Gotham Pressed Steel Corp.*, 266 *App. Div.* 866, 42 *N. Y. S.* 2d 341. See *Hamson v. Standard Grocery Co.*, 328 *Mass.* 263, 103 *N. E.* 2d 233.

The complaint charges negligence in three respects: (1) failure to inspect; (2) failure to warn; (3) failure to remove the top from its display counter when it knew or should have known of its defective construction. Assuming (as we must) that there was some kind of defect in the top, we cannot be sure whether this defect consisted of improper design or a failure to properly carry out that design. Conceivably, it could be found that, even if the manufacturer made the top exactly as planned, the plan itself was defective in that this method of fastening the spring was entirely inadequate. Surely any blame for that kind of negligence must rest upon the manufacturer rather than the retailer, there being no indication here that defendant had knowledge of any former difficulties of this nature or had any other reason to believe the design was improper.

On the other hand, it is conceivable that the metal ring was not pushed into the wood as firmly as the design called for, thus constituting a defect in manufacture. That possibility requires consideration of whether defendant was under a duty to inspect the top, for there could be no duty to warn or to refuse to sell in the absence of actual knowledge of the defect or of a duty

to inspect and find the defect, and there is nothing in the record to indicate that defendant or its agents had any actual knowledge of the alleged dangerous character of the article.

Certain facts convincingly show that the alleged defect was not patent. In the first place, the top was used by several children over a period of three to four months before the spring gave way. Had the defect been discoverable by mere glance, it would hardly have withstood such use for that period of time. Moreover, it is highly probable that the adult plaintiff (a school teacher) would himself have observed it and would not have allowed his children to use it. On the other hand, if the defect was not discoverable by simply looking at it and was thus a latent defect, it is hard to see what tests could have been applied by this defendant to determine its so-called dangerous propensities without destroying the toy itself. A glance would not disclose how deeply the metal ring was imbedded in the wood; pulling on the end of the spring with the fingers would certainly have been useless, otherwise the top would not have lasted for three or four months. To find how much punishment the rotator could withstand, defendant would have been obliged to do much more than this. A rule requiring retailers to go to such an extent in discovering latent defects is hardly consistent with modern day life. Plaintiffs' theory would impose a burden upon retailers which is not only unrealistic but also goes beyond any legal precedent called to my attention.

The general rule is that a retailer is under no obligation to test articles made by another for the purpose of discovering latent or hidden dangers therein. 46 *Am. Jur.* 930. *The Restatement of the Law of Torts,* 1948 Supplement, Section 402, goes so far as to say that such a vendor who neither knows nor has reason to know that the article is, or is likely to be dangerous, is not subject to liability even though he could have discovered the danger by an inspection or test. In this connection, the term "reason to know" is used to denote the fact that the actor has information from which he should have inferred an-

other fact. Those words do not impose any duty to ascertain unknown facts, and are to be distinguished from the words "should know". *op. cit.* Section 401.

The factual situation presented by the present record discloses no basis in law for holding this defendant guilty of negligence. It is possible that a valid cause of action may exist against the manufacturer, whose responsibility differs from that of the retailer, but this question is not before the Court. Defendant's motion must be granted.