STATE OF HAWAII, Plaintiff-Appellee, *v.* ROY AIU APAO, Defendant-Appellant

NO. 6077

NOVEMBER 2, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KOBAYASHI, J.

Defendant-appellant Roy Aiu Apao (hereinafter appellant) was found guilty by a jury of the murder on July 20, 1974,

of Faafouina Tuaolo (hereinafter victim), a person known by the appellant to be a witness in a murder prosecution.

We affirm.

## ISSUES

I. Whether the trial court erred in denying appellant's motion to dismiss the indictment.

II. Whether the trial court erred in denying appellant's motion in limine.

III. Whether the trial court erred in admitting into evidence prosecution exhibits 4, 5, 6 and 13.

IV. Whether the trial court erred in denying appellant's motion for mistrial.

V. Whether the trial court erred in denying appellant's motion for judgment of acquittal.

VI. Whether the trial court erred in its instructions to the jury as to the law of principals and accomplices.

VII. Whether the trial court erred in refusing to give appellant's requested instruction of the offense of manslaughter.

## STATEMENT OF THE CASE

Appellant was indicted on November 21, 1974, for the crime of murder. The indictment read as follows:

The Grand Jury charges:

On or about the 20th day of July, 1974, in the City and County of Honolulu, State of Hawaii, ROY AIU APAO did intentionally or knowingly cause the death of Faafouina Tuaolo, a person known by Roy Aiu Apao to be a witness in a murder prosecution, by beating the said Faafouina Tuaolo, thereby committing the offense of murder in violation of Section 701 and 606(a) (ii) of the Hawaii Penal Code, Act 9, Session Laws of Hawaii, 1972.

Although the transcript of the grand jury hearing leading to this indictment has not been included as part of the record

on appeal and is not before us, the briefs of appellee and appellant agree as to the following facts and we accept the facts as admissions.[1]

On November 20, 1974, the grand jury heard testimony connecting appellant with the murder of the victim. Three witnesses were called to testify. The first witness, police officer William Ornellas, testified that appellant was involved in a prior murder prosecution as a defendant, and the victim had been a witness against the appellant in the prior case. Following the testimony of Ornellas, two other witnesses, Gilbert Mattos and detective Louis Souza, testified as to the events of July 20, 1974, the day the victim was killed.

On December 15, 1975, prior to the commencement of trial and out of the presence of the prospective jurors, appellant moved in limine to have the court preclude the prosecution from presenting any evidence that the defendant had been charged with murder in another case. The record shows that either in addition to or as part of the same motion, appellant moved to dismiss the indictment on the ground that the charge as stated in the indictment was "incorrect". Appellant moved for a mistrial and for a judgment of acquittal. The court denied all four motions.

At trial, three persons who were with the appellant and victim on the day of the killing, Gilbert Mattos, Dennis Labor, and Alexander Carvalho, testified as to the events of July 20, 1974.

---

[1] In Orso v. City & County of Honolulu, 55 Haw. 37, 38, 514 P.2d 859, 860 (1973), we said: "3A Barron & Holtzoff, Federal Practice & Procedure § 1590 (Rules ed. 1958), states the general rule: 'Matters not appearing in the record will not be considered by the court of appeals, *unless the occurrence thereof is conceded by the parties*. Thus a question involving evidence not in the record cannot be reviewed on appeal.' " [Emphasis added.] Where the briefs of both parties treat certain facts as true, this court may consider such as admission. Combs v. Combs, 435 S.W.2d 166, 167 (Tex. Civ. App. 1968); Motor Contract Co. of Atlanta v. Wigington, 116 Ga.App. 398, 157 S.E.2d 321 (1967); Mueller v. Banks, 317 S.W.2d 812 (Tex. Civ. App. 1958); Lawless v. St. Paul Fire & Marine Ins. Co., 100 Ariz. 392, 393, 415 P.2d 97, 97 (1966); Simmons v. Richardson Variety Stores, 51 Del. 80, 81, 137 A.2d 747, 748 (1957); Standard Iron Works v. Maryland Casualty Co., 56 Cal. App. 600, 206 P. 136 (1922).

Detective James Dang testified that at Ham's Flat, he found a strip of metal two and a half inches long and three-fourths inch wide and one-eighth inch thick near the victim's head. The metal piece was identified as Prosecution's Exhibit number 2.[2] Detective Dang also identified four photographs which he had taken at Ham's Flat on July 21, 1974, and which were marked as Prosecution's Exhibits 3, 4, 5, and 6.

Exhibit 4 is an eight-inch square color enlargement showing the victim as he was found by the police. The victim is shown lying on his back, fully clothed with his shirt out of place exposing his chest and abdomen. This exhibit is not a close-up. The photo shows what appears to be a cut on the victim's forehead near his hairline.

Exhibit 5 is also an eight-inch square color enlargement, this time a close-up of the victim's face, chest and his right arm, which bore a prominent tattoo. The photo shows the extent of the victim's injuries as his face is battered, bloody and swollen.

Exhibit 6 is an eight-inch square black and white enlargement depicting the victim lying face down on a sheet and showing the injuries to the back of his head. Exhibits 2, 3, 4, and 5 were subsequently introduced into evidence over defense attorney's objections,

The testimony of Alvin Majoska, forensic pathologist, established that death was caused by "compound comminuted fracture of the entire skull"; that the majority of the victim's injuries were in the skull area; that a punch by an individual could not have caused the fatal injuries; that the victim's death was caused by a "stick-type instrument, probably metal, with a cross section depicting a corner or a triangle." Dr. Majoska testified that he was familiar with bumper jacks and it was his opinion that a bumper jack could have been used to cause the injuries.

Detective Louis Souza testified that, following an interview with Alan Rapoza, he recovered a jack in a stream bed in

---

[2] Detective Souza testified that the metal piece resembled the locking mechanism of a jack.

the Waimanalo area. The stream where the jack was found matched the description of the stream into which witnesses Mattos and Carvalho testified Rapoza had thrown the jack used in the killing. Detective Souza identified the jack marked as Prosecution's Exhibit 13 as the jack which he had found. The jack was subsequently introduced into evidence over defense counsel's objections.

Near the close of trial on Wednesday, December 17, 1975, appellant requested an instruction regarding manslaughter. The record shows that no instruction on manslaughter was given. The trial court instructed the jury, over the objections of appellant, on the law of principals and accomplices as follows:

> An accomplice is one who unites with another person or persons in the commission of a crime, voluntarily and with common intent. . . .
>
> . . . .
>
> All persons concerned in the commission of a crime who either directly and actively commit the act constituting the offense or who knowingly and with criminal intent aid and abet in its commission or, whether present or not, who advise and encourage its commission, are regarded by the law as principals in the crime thus committed and are equally guilty of the crime.
>
> In other words all persons who are present and participate in the commission of a crime are responsible for the acts of each other done or made in furtherance of the crime.
>
> It is not necessary to prove that each one committed all the acts of the crime.
>
> Each person who does one act which is an ingredient of the crime or immediately connected with it is as guilty as if he committed the whole crime with his own hands.

## STATEMENT OF FACTS

The record indicates that on the day of the killing, the victim visited Alex "Boy" Carvalho at Carvalho's home in

Waimanalo and asked for a ride to Kailua, Oahu. Realizing that the victim was a witness in appellant's pending murder prosecution, Carvalho telephoned appellant and suggested taking the victim to Kailua police station so that the victim could report certain threats which had purportedly been made against the victim by the victim's cousin, Mike Tuaolo. Appellant agreed to this plan. According to Carvalho's testimony, although he and the appellant had not planned to meet, as he was driving the victim to Kailua, he saw appellant parked at Frankie's Drive In and pulled his Chevy van into the Drive In. Carvalho testified that the Drive In is situated on the *only* road leading from his home in Waimanalo to the police station in Kailua. Appellant was accompanied in his car by Dennis Labor. Along with Carvalho and the victim were Gilbert Mattos, Alan Rapoza, Mrs. Carvalho, and the Carvalhos' two children. The descriptions of the events which purportedly followed the meeting at Frankie's Drive In, as reported by three eye witnesses, Gilbert Mattos, Dennis Labor, and Alex Carvalho, conflict.

Mattos testified that when they met the appellant at the Drive In, the appellant walked over to the van, opened the passenger's door, reached over Mattos and started punching the victim, asking him whether he was going to testify in the Pagan case.[3] The victim kept repeating that he would not testify. The appellant then told Mrs. Carvalho to leave with the children in appellant's car. Mattos testified further that the appellant and Labor got into the van and they all drove off. After driving around for a while during which time the victim was being beaten by appellant and others in the van, appellant, after looking at how badly the victim was beaten, said in a loud voice: "Look like we got to kill 'em." Mattos testified that Rapoza said to appellant, "I like kill 'em."

Both Carvalho and Labor testified that, at the meeting at the Drive In, appellant simply left his car and went over to talk to Carvalho. Carvalho testified that appellant told him to

---

[3] The reference here was to a pending criminal case involving the murder of Sina Pagan.

follow appellant to the Kailua police station. Carvalho testified that he followed appellant, heading in the direction of the police station. Before reaching the police station, however, appellant turned into Maunawili School and Carvalho followed. Both Carvalho and Labor testified that it was here that the appellant began punching the victim. Carvalho testified that the appellant was questioning the victim not about the Pagan case, but about another matter. Labor and Carvalho testified that at Maunawili School, Mrs. Carvalho and the children left in appellant's car, and appellant and Labor got into the van.

All three men testified that once Labor and the appellant got into the van they drove off heading back towards Waimanalo, and on the drive, appellant participated in beating the victim. Both Mattos and Carvalho testified that it was appellant who told Carvalho to drive to Ham's Flat, a deserted area in Waimanalo where the victim's body was found the next day.

The testimony indicates that the victim was unconscious or nearly unconscious when they reached Ham's Flat. Mattos testified that the appellant, Rapoza and Labor then pulled the victim from the van; that Rapoza got the jack from the van and took it out with him. Mattos claimed that he then moved into the passenger's seat and urged Carvalho to leave. He testified that he heard the sound of the jack hitting flesh and he knew someone was getting killed. Mattos testified that he heard the appellant ask, "You sure he dead?", and immediately after saw Labor hit the victim with the jack.

Labor testified that Mattos and Rapoza took the victim out of the van and that Rapoza hit the victim with the jack. He also testified that he never left the van at Ham's Flat and that he couldn't remember what the appellant was doing while they were there.

Carvalho testified that the appellant and Rapoza pushed the victim out of the van, and it sounded as if those two were beating the victim. He testified that Rapoza came back into the van and got the jack and the appellant took it from him. After that he didn't see anything since Mattos had moved up to the front and was asking him to leave. Carvalho testified

that Labor was sitting somewhere in the back of the van while they were at Ham's Flat. Carvalho testified that he too could hear the sounds of the jack hitting someone.

All three agreed that once the persons outside the van jumped back in they drove off, leaving the victim at Ham's Flat and headed for the appellant's home. Along the way they threw the jack into a stream in Waimanalo, and disposed of the blanket or mattress that had been on the floor of the van.

Mattos and Carvalho testified that after having disposed of the jack, appellant told the group not to talk about the incident to anyone.

All three witnesses denied having a "plan" to kill the victim. Mattos testified that: "I did not have no thoughts that there was going to be a murder committed by Roy Apao. . . ." On cross-examination and in response to questions by appellant's counsel Labor denied that there was a "plan" to beat or kill the victim. Also on cross-examination, Carvalho denied that there was a plan to beat or cause the death of the victim and that no one "agreed" to do anything harmful to the victim.

The appellant did not testify at trial.

OPINION

I. WHETHER THE TRIAL COURT ERRED IN REFUSING TO DISMISS THE INDICTMENT.

The appellant contends that the inclusion of the phrase "a person known by Roy Aiu Apao to be a witness in a murder prosecution" in the indictment was erroneous because the appellant's knowledge of the victim's status as a witness in a murder prosecution did not constitute an element of the crime of murder. Appellant contends that the indictment should have been dismissed because the phrase was inflammatory and prejudicial, destroyed the presumption of appellant's innocence in the eyes of the grand jury, and denied him a fair hearing in violation of the due process clause of the Fourteenth Amendment of the United States Constitution and Article I, section 4 of the Hawaii State Constitution.

Although we agree with the appellant that under HRS § 707-701(1), the victim's status as a witness in a murder prosecution was not an essential element of the crime of murder, we do not agree that the inclusion of the sentencing provision was prejudicial or destroyed the presumption of appellant's innocence in the eyes of the grand jury.

According to HRS § 707-701(1), except as provided in HRS § 707-702,[4] a person commits the offense of murder "if he intentionally or knowingly causes the death of another person." This section further states in subparagraph (2):

> Murder is a class A felony for which the defendant shall be sentenced to imprisonment as provided in section 706-606.

HRS § 706-606 provides in pertinent part:

> *Sentence for offense of murder.* The court shall sentence a person who has been convicted of murder to an indeterminate term of imprisonment. In such cases the court shall impose the maximum length of imprisonment as follows:
>
> (a) Life imprisonment without possibility of parole in the murder of:
>
> (i) .    .    .    .
>
> (ii) A person known by the defendant to be a witness in a murder prosecution, . . . .
>
> (iii) .    .    .    .

We acknowledge that due process requires that an indictment contain all the essential elements of the offense charged, and "[t]he omission of an essential element of the

---

[4] HRS § 707-702 provides:

*Manslaughter.* (1) A person commits the offense of manslaughter if:

(a) He recklessly causes the death of another person; or

(b) He intentionally causes another person to commit suicide.

(2) In a prosecution for murder it is a defense, which reduces the offense to manslaughter, that the defendant was, at the time he caused the death of the other person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation. The reasonableness of the explanation shall be determined from the viewpoint of a person in the defendant's situation under the circumstances as he believed them to be.

crime charged is a defect in the substance rather than form."
*State v. Jendrusch,* 58 Haw. 279, 567 P.2d 1242 (1977); *Territory v. Henriques,* 21 Haw. 50 (1912). *See United States v. Radetsky,* 535 F.2d 556 (10th Cir. 1976).[5]

In *State v. Frazier,* 81 Wash.2d 628, 503 P.2d 1073 (1972), however, the Washington supreme court held that the defendant was deprived of procedural due process when the information *failed* to allege specific acts which, if proved, would bring the defendant under the statutes imposing additional penalties. The court said at 1077:

> Where a factor aggravates an offense and causes the defendant to be subject to a greater punishment than would otherwise be imposed, due process requires that the issue of whether that factor is present, must be presented to the jury upon proper allegations and a verdict thereon rendered before the court can impose the harsher penalty. . . .

> . . . .

> The inclusion of this separate issue in the information and verdict will give the appellant notice prior to trial that, if convicted, and if the jury finds the facts causing the aggravation are correct, she will have no possibility of probation. . . .

Other jurisdictions have held that aggravating circumstances must be charged in the indictment in order for an enhanced penalty to be imposed. *State v. Barreras,* 88 N.M.

---

[5] In that case, the court said at 562:

First, the indictment must contain the elements of the offense and sufficiently apprise the defendant of what he must be prepared to meet; second, it must be such as to show to what extent he may plead a former acquittal or conviction as a bar to further prosecution for the same cause. . . . And a purpose corollary to the first is that the indictment inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. . . . Furthermore, and of paramount importance, a sufficient indictment is required to implement the Fifth Amendment guaranty and make clear the charges so as to limit a defendant's jeopardy to offenses charged by a group of his fellow citizens, and to avoid his conviction on facts not found, or perhaps not even presented to, the grand jury that indicted him. [Citations omitted.]

52, 536 P.2d 1108 (1975); *State v. Blea,* 84 N.M. 595, 506 P.2d 339 (1973); *People v. Najera,* 8 Cal.3d 504, 105 Cal. Rptr. 345, 503 P.2d 1353 (1972); *State v. Blacker,* 234 Or. 131, 380 P.2d 789 (1963); *Jordan v. United States District Court for District of Columbia,* 233 F.2d 362 (D.C. Cir. 1956); *State v. Ashworth,* 346 Mo. 869, 143 S.W.2d 279 (1940).

In our opinion, the better rule is to include in the indictment the allegations, which if proved,[6] would result in application of a statute enhancing the penalty for the crime committed. This will give defendants fair notice of the charges against them. The common law required that "every wrongful act which [was] to be taken into account in determining the punishment be alleged in the indictment." *State v. Blacker, supra,* 380 P.2d at 791, and it was necessary to allege particular facts in the indictment which created an aggravation of the crime charged. *Id.* at 792.

We, therefore, conclude that the indictment in this case clearly stated all the essential elements of the crime of murder, and properly included the allegation that the appellant knew that the victim was a witness in a prior murder prosecution.

The appellant further argues that officer Ornellas' testimony at the grand jury hearing biased the grand jury against the appellant, and the court's ruling in *State v. Joao,* 53 Haw. 226, 491 P.2d 1089 (1972), requires that the indictment be dismissed.

In *State v. Joao, supra,* we held that the requirement that an indictment be returned by an unprejudiced grand jury emanates from the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and that a defendant need not prove that a grand jury was in fact prejudiced. A tendency to prejudice was sufficient to quash an indictment. That tendency could be presumed when the prosecutor invaded the province of the grand jury to induce action other than that which the jurors, uninfluenced, would

---

[6] Under proper instruction by the court to the jury.

have reached. In *Joao* the prosecution presented only one witness to the grand jury. The prosecutor made statements to the panel calculated to bolster the witness' credibility by stating that the witness, who was the original defendant, "has decided to make a clean break." Further, while testifying, the witness understated the extent of his own criminal record and the prosecutor, knowing the truth, did nothing to correct the mistaken impression.

In our opinion, our ruling in *Joao, supra,* is not controlling herein. Officer Ornellas was not the sole witness who testified before the grand jury. Appellant has not contended that without Officer Ornellas' testimony, the indictment of appellant would not have been based on sufficient probable cause. Furthermore, the facts in this case and *Joao, supra,* are dissimilar. The testimony objected to herein cannot be equated substantively with the testimony we condemned in *Joao, supra.* We, therefore, conclude that *State v. Scotland,* 58 Haw. 474, 572 P.2d 497 (1977), is applicable. As we stated in that case, 58 Haw. at 476, 572 P.2d at 498:

> [W]here sufficient legal and competent evidence is presented to a grand jury the reception of illegal or incompetent evidence would not authorize the court to set aside an indictment if the remaining legal evidence, considered as a whole, is sufficient to warrant the indictment. *State v. Hassard,* 45 Haw. 221, 365 P.2d 202 (1961). . . .

. . . . .

We hold that in proceedings determing the validity of an indictment, the state does not have the burden of proving that the alleged illegal or improper testimony is not prejudicial; it is the duty of the defendant to come forward and present a case proving prejudice. "[I]n the absence of proof, the court will not assume or conjecture, as a matter of fact, that the grand jury deliberations were so infected as to invalidate the indictment." *United States v. Hoffa,* 205 F.Supp. 710 (S.D. Fl. 1962), *cert. denied sub nom. Hoffa v. Lieb,* 371 U.S. 892 (1962). "We rule that a specific showing of prejudice is necessary to make erroneous the action of the trial judge in refusing to dismiss

the indictment." *Beck v. United States*, 298 F.2d 622,.627 (2d Cir. 1962), *cert. denied* 370 U.S. 919 (1962); *United States v. Hoffa, supra.*

If the illegal or improper testimony clearly appears to have improperly influenced the grand jurors despite the presence of sufficient evidence amounting to probable cause to indict the defendant, he would be entitled to a dismissal. *People v. Barbour,* 152 Misc. 39, 273 N.Y.S. 788 (1934). . . .

The record is insufficient to show that the alleged improper testimony of Officer Ornellas *clearly* influenced the jurors, and since the parties admit that other witnesses testified as to the events of the day of the victim's death, it will be presumed that the indictment was found as the law directs. *State v. Layton*, 53 Haw. 513, 516, 497 P.2d 559, 561-62 (1972).

## II. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION IN LIMINE.

Appellant claims that the presentation of evidence of his prior prosecution for the murder of Sina Pagan was so prejudicial that he was denied the right to be heard by a fair and impartial jury. We disagree.

In his opening brief the appellant designated as error only the trial court's denial of his motion in limine, and failed to designate the court's ruling to admit, over appellant's objection, testimony on the same subject. Since the subject matter of the pre-trial motion and the evidentiary rulings at trial addressed the same issue, this court will consider both on appeal. Rules of the Supreme Court 3(b)(3).

We agree with appellant that as a general rule evidence of other crimes committed by the accused is not admissible, *see State v. Carvelo*, 45 Haw. 16, 361 P.2d 45 (1961); *State v. Yoshida*, 45 Haw. 50, 361 P.2d 1032 (1961). However, this rule is subject to the well recognized exception that evidence of prior crimes is admissible to show motive or intent. *State v. Yoshida, supra; Territory v. Alford,* 39 Haw. 460 (1952); *People v. Price,* 7 Ill. App.3d 110, 286 N.E.2d 530 (1972); *People v. Odum,* 27 Ill.2d 237, 188 N.E.2d 720 (1963); *State v.*

*Barnes,* 204 S.W. 264 (Mo. 1918); *Commonwealth v. Andrews,* 234 Pa. 597, 83 A. 412 (1912); *Hodge v. State,* 97 Ala. 37, 12 So. 164 (1893).

In the case at bar the evidence concerning appellant's connection with the murder of Sina Pagan was presented to establish that he had a motive to kill the victim in this case, and that appellant knew the victim was a witness in the murder prosecution involving Pagan. This evidence clearly falls within the recognized exception. Therefore, we find that the trial court did not abuse its discretion in denying appellant's motion in limine to exclude the foregoing evidence and the court properly admitted the evidence to establish motive.

III. WHETHER THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE PROSECUTION EXHIBITS 4, 5, 6 AND 13.

The appellant objected at trial to the introduction into evidence of three photographs of the deceased victim and an automobile bumper jack. Appellant contends that the prejudicial effect of the photographs far outweighs their potential evidentiary value. We do not agree.

There appear to be two views on the admissibility of photographs of homicide victims. The first, expressed by prior cases of this court, is that admissibility is solely within the discretion of the trial court. As long as the photo has some evidentiary value despite any tendency it may have to inflame the prejudices of the jury, they are admissible. *Lyon v. Bush,* 49 Haw. 116, 412 P.2d 662 (1966); *State v. Molina,* 47 Haw. 391, 390 P.2d 132 (1964); *Territory v. Josiah,* 42 Haw. 367 (1958); *Territory v. Joaquin,* 39 Haw. 221 (1952). The second view regarding the admissibility of photographs of homicide victims was expressed in *People v. Steger,* 16 Cal.3d 539, 128 Cal. Rptr. 162, 170, 546 P.2d 665, 674 (1976):

. . . The test determining whether photographs may be shown to the jury is not whether they are necessary, but whether their probative value outweighs their possible prejudicial effect.

In our opinion, the photographs had significant probative value in establishing the identity of the victim. Furthermore,

we find very little in these photographs that would tend to inflame the prejudices of the jury. Of the two in color, one shows the victim's body lying in some grass with a red patch of what could be blood near his hairline. The close-up shows the victim's facial injuries clearly, and although badly beaten, the victim's face is not gruesome. The third photo does depict a deep gash on the back of the victim's head, but this photograph is in black and white and we do not consider it gruesome either.

Appellant contends that the trial court erred when it admitted the bumper jack, reputed to be the murder weapon, into evidence. The appellant claims that there was no proper foundation laid for admitting the jack; that there was nothing linking that particular jack to the crime; in other words, that the jack was irrelevant. We disagree.

The proper test for determining the admissibility of real evidence was set out by this court in *State v. Dameg*, 51 Haw. 308, 459 P.2d 193 (1969). Citing *Territory v. Henry*, 39 Haw. 296, 298 (1952), the court stated:

> . . . [A]ny evidence "which, when taken alone or in connection with other evidence, affords reasonable inferences upon the matter in issue, or which touches upon the issues in such a way as to enable the jury to draw a logical inference with respect to the principal fact in issue, is relevant and admissible."

More recently in *State v. Irebaria*, 55 Haw. 353, 519 P.2d 1246 (1974), this court affirmed a conviction based in part on the admission into evidence of a shell fragment and a spent cartridge found at the crime scene. The defendant claimed the evidence was irrelevant because there was no showing that the fragment or cartridge were fired from the gun found on the defendant. This court said at 55 Haw. 356, 519 P.2d 1248:

> The question on appeal is whether or not the evidence admitted over objection had any probative value.
>
> "The test of admissibility is not one of absolute proof of an ultimate fact in controversy but involves the question of relevancy of proof, relevancy not being dependent upon the conclusiveness of the testimony offered, but its

legitimate tendency to establish a controverted fact. *Bonacon v. Wax*, 37 Haw. 57, 61 (1945) (Citations omitted)."

The testimony of Dr. Majoska, witnesses Carvalho, Mattos, and Labor, Detective Souza and Detective Dang clearly establishes the relevancy and significant probative value of the bumper jack as the alleged murder weapon. The jury could logically infer that this particular jack had been used by appellant to kill the victim.

IV. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR MISTRIAL.

Appellant, in his opening brief, argues that there was prosecutorial misconduct prior to trial by Deputy Prosecuting Attorney Earle Partington. Appellant further claims, for the first time on appeal, that a mistrial should have been granted since the jury was able to see the appellant shackled in leg irons throughout the course of the trial, and that the conduct of the trial judge towards appellant and his counsel prejudiced appellant in the minds of the jurors. We disagree.

Regarding prosecutorial misconduct, the appellant claims that attorney Partington attempted to intimidate Dennis Labor, a prosecution witness, into changing his testimony to further incriminate the appellant. Appellant claims he was substantially prejudiced thereby.

The uncontested testimony of Dennis Labor, however, indicates that although there was an effort made by the prosecution to have him bend his testimony, these efforts were unsuccessful and Labor's testimony at trial cannot be said to be untruthful; neither can it be shown that the said attempt by the prosecutor substantially prejudiced appellant's "fundamental right to have the jury fairly evaluate the merits of [appellant's] defense". *State v. Bucanis*, 26 N.J. 45, 56, 138 A.2d 739, 745 (1958). Although there was misconduct on the part of Attorney Partington, the misconduct did not substantially prejudice the appellant's right to a fair trial.

The appellant's claim that he was readily visible to the jury in leg irons and that defense counsel's request to the

court to remove the leg irons was erroneously denied is unsubstantiated by the record on appeal. There is no record that physical restraints were ever imposed on the appellant. Hence, we are unable to rule on this issue. Furthermore, after carefully reviewing the record in its entirety, we find appellant's claim that the trial court's conduct toward the appellant prejudiced appellant in the minds of the jurors is clearly without merit. We find the conduct of the trial court in this case to be unquestionably fair and impartial.

## V. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL.

At the close of the State's case the appellant, through his attorney, moved the trial court to grant the appellant a judgment of acquittal. The appellant contends that the trial court's denial of this motion amounted to reversible error. We do not agree.

Rule 29(a) of the Hawaii Rules of Criminal Procedure (these rules have since been superseded by the Hawaii Rules of Penal Procedure, effective date January 1, 1977) provides in pertinent part that:

> . . . The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offenses.

The standard for determining whether "the evidence is insufficient to sustain a conviction" has been stated repeatedly by this court. In *State v. Rocker*, 52 Haw. 336, 475 P.2d 684 (1970), this court quoted from *Curley v. United States*, 160 F.2d 229, 232 (D.C. Cir. 1947), *cert. denied*, 331 U.S. 837 (1947):

> The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the

evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. . . .

Regarding the standard on appeal, the court stated at 52 Haw. 346, 475 P.2d 690:

This court will not disturb the ruling of a lower court if the evidence of the prosecution is such that "a reasonable mind might fairly conclude guilt beyond a reasonable doubt."

In *State v. Kelsey*, 58 Haw. 234, 236, 566 P.2d 1370, 1371 (1977), this court, in deciding whether the trial court had erred in denying the defendant's motion for a judgment of acquittal, ruled that:

. . . the evidence adduced in the trial court must be considered in its strongest light for the state by an appellate court in passing on its legal sufficiency to support a conviction.

And again in *State v. Yabusaki*, 58 Haw. 404, 570 P.2d 844 (1977), we stated at 58 Haw. 411, 570 P.2d 848:

It is well settled that to deny a motion to acquit there must be sufficient evidence to support a prima facie case; the evidence must enable a reasonable mind fairly to conclude guilt beyond a reasonable doubt, giving full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact. . . . [Citations omitted.]

In order for this court to sustain the trial court's ruling denying the appellant's motion for a judgment of acquittal it must appear from the record that the prosecution presented to the jury sufficient evidence to support each element of the indictment.

There is no dispute that the victim in this case, Faafouina Tuaolo, was a person within the meaning of the statute. There is also no dispute that the appellant knew the victim was a witness in the murder prosecution involving the death of Sina Pagan. Three witnesses testified that the appellant was present when the victim testified in a preliminary hearing in that case. The appellant, subsequent to that testimony, entered into a stipulation agreeing that he knew the victim was a

witness in the murder prosecution.

The record clearly supports the trial court's denial of the motion for a judgment of acquittal. The prosecution more than amply established its prima facie case. We find no error in the denial of the motion.

## VI. WHETHER THE TRIAL COURT ERRED IN ITS INSTRUCTIONS TO THE JURY AS TO THE LAW OF PRINCIPALS AND ACCOMPLICES.

The appellant claims that the instruction given by the court was a misstatement of the law of principals and accomplices and, that since the indictment in this case did not specify that he was being charged as either a principal or an accomplice, any instruction on this point was reversible error. We disagree.

The commentary on subsection (1) of HRS § 702-221 states in part: "Distinctions between principals and accessories have been dispensed with and a defendant may be convicted directly of an offense committed by another for whose conduct he is accountable."

HRS § 702-221 states:

(1) A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

(2) A person is legally accountable for the conduct of another person when:

. . . . 

(c) He is an accomplice of such other person in the commission of the offense.

HRS § 702-222 states:

A person is an accomplice of another person in the commission of an offense if:

(1) with the intention of promoting or facilitating the commission of the offense, he:

(a) solicits the other person to commit it; or

(b) aids or agrees or attempts to aid the other person in planning or committing it; or

(c) having a legal duty to prevent the commission of the offense, fails to make reasonable effort so to do; or

(2) his conduct is expressly declared by law to establish his complicity.

HRS § 702-223 states:

When causing a particular result is an element of an offense, an accomplice in the conduct causing the result is an accomplice in the commission of that offense, if he acts, with respect to that result, with the state of mind that is sufficient for the commission of the offense.

The trial court's instructions on this point accurately presented the relevant law to the jury. The trial court is not required to instruct the jury in the exact words of the applicable statute but to present the jury with an understandable instruction that aids the jury in applying that law to the facts of the case. This court stated in *State v. Napeahi,* 57 Haw. 365, 377, 556 P.2d 569, 576 (1976):

The "[q]uestion on review of instructions is not whether they were technically correct, but whether defendant could have suffered prejudice on their account." . . . " 'In determining the sufficiency of a particular instruction, or part of a charge, it is not to be considered apart from its context, or the rest of the charge. Both in civil and in criminal cases the instructions of the court must be read together as one connected whole, to ascertain whether they correctly declare the law. . . .' "

In considering the trial court's instructions in their entirety we cannot say that the appellant was prejudiced by the court's statement of the law on the criminal liability of principals and accomplices.

The appellant also claims that because the indictment in this case did not notify him that he was being charged as a principal or accomplice he was unable to prepare a proper defense.

The same argument was made in the case of *State v. Cooper,* 26 Wash.2d 405, 174 P.2d 545 (1946), where the defendant appealed from a conviction of murder in the first

degree. There, the court said that the defendant was sufficiently put on notice when he was charged as a principal in the indictment, and the court did not err in instructing the jury on the theory of "aiding and abetting." The court said that the prosecuting attorney was not bound under the statute to elect between charging the defendant as a principal or an accessory.

Other jurisdictions have held that when the indictment charges a defendant as principal, it is not error for the court to instruct the jury that under the facts of a particular case, the defendant may be guilty as an aider and abetter. *Nye & Nissen v. United States*, 336 U.S. 613 (1949); *Theriault v. United States*, 401 F.2d 79 (8th Cir. 1968); *Giraud v. United States*, 348 F.2d 820 (9th Cir. 1965); *State v. Cooper, supra; Ransom v. State*, 460 P.2d 170 (Alaska 1969).

In this case, two witnesses testified that it was appellant who told Carvalho to drive his van to Ham's Flat; that appellant participated in beating the victim while the victim was in the van; that appellant participated in dragging the victim from the van; that appellant was outside the van when the victim was being beaten with the bumper jack; that appellant took the jack from Rapoza; that appellant told the group not to talk about the incident to anyone. The proof adduced was sufficient to support the indictment and jury was properly instructed.

VII. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GIVE APPELLANT'S REQUESTED INSTRUCTION OF THE OFFENSE OF MANSLAUGHTER.

In the case at bar, the appellant did not testify. Therefore, any evidence as to his state of mind at the time of the killing must be inferred from his conduct as testified to by the witnesses at trial. We do not find any evidence in the record for the trial court to conclude that there was a rational basis for charging the appellant with manslaughter.

It was uncontradicted that Carvalho was the driver of the van which transported the victim, Mattos, Rapoza, Labor,

and appellant from Carvalho's home in Waimanalo to Frankie's Drive In on July 20, 1974. Although Carvalho testified that he and the appellant did not plan to meet at the Drive In, Carvalho's testimony also revealed that the Drive In where appellant met Carvalho was situated on the *only* road leading from his home in Waimanalo to the police station in Kailua. Appellant knew that the victim was being driven by Carvalho to Kailua, and appellant, as far as the evidence shows, was the only one in the group with a motive to harm the victim. Although no one testified that they actually saw appellant strike the victim with the jack, Carvalho testified that he saw appellant take the jack from Rapoza and subsequently heard "punching" sounds.

Although all three witnesses denied having a "plan" to kill the victim, the denials fail to support an inference that the appellant himself had not formulated an intent to kill the victim either prior to the meeting at the Drive In or subsequent to the beating of the victim and during the time that the group headed towards Ham's Flat. There was no direct testimony to negate such an intent. Furthermore, assuming, *arguendo*, that the initial "plan" was to give the victim a "beating" only, the uncontradicted testimony of Mattos indicates that the beating was so extreme and severe that the original plan to "beat" was intentionally and deliberately altered to a plan to kill the "Samoan." The bumper jack which was introduced into evidence was a large, very heavy, solid metal instrument. It was not an instrument to be used merely to administer a "beating." Furthermore, as Dr. Majoska testified, the victim's death was caused by a "stick-type instrument, probably metal, with a cross section depicting a corner or a triangle," and the instrument was used on the victim's head.

We fail to find, as we did in *State v. Warner*, 58 Haw. 492, 573 P.2d 959 (1977), any evidence on the record to justify a manslaughter instruction. The evidence presented in the case before us does not show a conflict in testimony as to appellant's state of mind at the time the victim was killed. Appellant's conduct from the time he participated in beating the victim in Carvalho's van until the events occurring at

Ham's Flat is consistent with the conclusion of the jury that the appellant had formulated the requisite intent to commit the crime of murder.

Judgment affirmed.

*Max Nakata Garcia* for defendant-appellant.

*Roy Chang,* Deputy Prosecuting Attorney (*Charles A. Viviano,* Deputy Prosecuting Attorney, on the brief) for plaintiff-appellee.