STATE OF HAWAII, Plaintiff-Appellee, *v.* HENDERSON AHLO, JAMES KEALOHAPAUOLE and JAMES OTIS PALAMA, Defendants-Appellants

NO. 7107

CRIMINAL NO. 5384

SEPTEMBER 30, 1981

PADGETT, ACTING C.J., BURNS, J. AND CIRCUIT JUDGE CHANG IN PLACE OF CHIEF JUDGE HAYASHI, DISQUALIFIED

*Per Curiam.* The three appellants here were convicted of murder in the first degree after a jury trial in Hilo.

On or about July 29, 1977, Benny Madamba died from a blow to the head which fractured his skull. On August 19, 1977, Madamba's badly decomposed body which was wrapped in bedding, was found in a canefield near Keaau, Hawaii. The bedding was traced to one Louis Mendonca and on August 29, 1978, after a grant of immunity and police protection, Mendonca told the police that he and four Honolulu men, the appellants and one Kenneth Edward Lendt, picked up Madamba in Fely's Bar in Hilo and took him to Mendonca's house. Mendonca did not see Madamba killed but he did see him struck and there were several blood stained objects around the house. Madamba had been taken into a bedroom and was being beaten when Mendonca left. Subsequently, he was told that everything was "pau" and was asked for a recommendation as to where to dump Madamba. Mendonca claimed that while cleaning up the house after the incident, the group discussed an alibi which centered on leaving Fely's Bar in search of a gambling game and finding none, dropping Madamba off in town in back of the Bar.

As a result of Mendonca's statements, two Honolulu police detectives sought out AhLo and Palama and found them in a pool hall. They asked them to go into the backroom of the pool hall (which they voluntarily did) and they then questioned them, getting state-

ments from them that they had gone to Hilo on July 29, had met Madamba at Fely's Bar, had left the Bar with him, that he wanted to go to a game but that they declined to join him and dropped him in town near some hotels.

Indictments were returned against AhLo, Kealohapauole, Palama and Lendt for the offenses of murder, hindering prosecution in the first degree and conspiracy to commit both of the preceding. Motions to sever were made and Lendt's trial was severed. Appellants gave notice of an alibi defense.

AhLo and Palama sought to have their August 3, 1977 statements suppressed but the court denied the same on the ground that they were voluntary. At trial, those statements were put in evidence as were photographs of Madamba's decomposed body, Madamba's skull and a video tape of the actual autopsy with the soundtrack deleted.

During the course of the trial, one Joseph D. Moniz was called as a witness. After he had been testifying for a period of time, the defense objected that he was not on the pretrial witness list. The court suspended his testimony to allow a competency examination. The defense filed a motion for mistrial or in the alternative, to strike his testimony but the defense later orally deleted the alternative of striking his testimony. Nevertheless, the court refused the mistrial but ordered the testimony stricken and cautioned the jury.

On May 1, 1978, the prosecution announced that Lendt would testify for the State. Motions for continuance or for counsel to withdraw were filed but denied. In point in fact, Lendt was not called as a witness for some three weeks. On May 22, 1978 after Lendt had testified, the appellants attempted to discharge their attorneys and their attorneys moved to withdraw from the case. The attorneys claimed that there were irreconcilable differences between them and their clients in that the clients wanted to go ahead with the alibi defense and the attorneys did not. The attorneys also claimed that there were ethical problems in that they no longer had any belief in the truth of their clients' alibi defense. After a lengthy hearing, the court below refused to allow counsel to withdraw. Appellants did not take the stand in support of their alibi defense.

At final argument, Appellant Kealohapaole's trial counsel was not permitted to use a chart to illustrate the matter of reasonable doubt during his argument. The conspiracy charges were not sub-

mitted to the jury and no clarifying instructions with respect to the evidence of conspiracy were asked or given. Jury verdicts were returned, finding the defendants guilty of murder and of hindering prosecution and each was sentenced to life in prison.

We have carefully considered each of the contentions of error raised by appellants and have concluded that no error has been shown. Accordingly, we affirm the judgment below.

The first contention is that the statements of AhLo and Palama, taken on August 31, 1977, should have been suppressed because no adequate *Miranda* warning was given before the policemen began to question the two individuals. The warning given was inadequate because the two appellants were not told specifically that if they could not afford counsel, counsel would be appointed by the court for them. If, therefore, they were questioned in a custodial situation, their statements should have been suppressed. We uphold the ruling of the court below denying suppression because it is obvious that the questioning of the appellants was not in a custodial situation.

Appellants argue that because of Mendonca's statements, the investigation had been focused upon them, and therefore, the questioning was custodial, citing a dictum *State v. Kalai,* 56 Haw. 366, 537 P.2d 8 (1975). However, in the later case of *State v. Patterson,* 59 Haw. 357, 581 P.2d 752 (1978), the court pointed out that focus, standing alone, would not trigger the application of the *Miranda* rule. The court then stated:

> In any event, whether the defendant was in custody or otherwise deprived of his freedom of action for *Miranda* purposes is to be determined from the totality of the circumstances, objectively appraised. . . . These would include the place and time of interrogation, the length of the interrogation, the nature of the questions asked, the conduct of the police, and all other relevant circumstances.

59 Haw. at 361. Here, the testimony indicates that the officer who initiated the conversation, while familiar with the *Miranda* rule and the necessary warning that must be given thereunder, gave only a loosely worded cautionary instruction to the appellants. This indicates that he did not think the situation was a custodial one. No statement was made to the effect that the appellants could not leave or were under arrest or were in any way deprived of their freedom

of action.[1] They were questioned for a short time at a pool hall after they were asked to step into the backroom which they voluntarily did; the questioning concerned their being in Hilo on the day of the alleged murder and their meeting Madamba; and when their story with respect to those events was elicited, they obviously spoke freely and without hesitation. We cannot see in these circumstances, any error in the refusal to suppress the statements. They appear to have been given in a noncustodial situation where the appellants were not deprived of their freedom of action for *Miranda* purposes.

The second claimed set of errors has to do with showing the skull, the photographs of the body and the video tape of the autopsy *sans* soundtrack to the jury.

With respect to the photographic evidence of the victim of a crime, the Hawaii Supreme Court in *State v. Apao*, 59 Haw. 625, 586 P.2d 250 (1978) quoted an earlier California decision stating:

. . . The test determining whether photographs may be shown to the jury is not whether they are necessary, but whether their probative value outweighs their possible prejudicial effect.

Applying that test in the *Apao* case, the Hawaii Supreme Court admitted the photographs in question.

Appellants urge that we should go further and adopt the view condemning the admission of photographs of the body of the decedent unless they have essential evidentiary value, following *Commonwealth v. Scaramussino*, 455 Pa. 378, 317 A.2d 225 (1974).

We are bound by the decisions of the Supreme Court of Hawaii and accordingly, if put to the test, would adopt the standard applied in *Apao, supra,* as against the allegedly different standards adopted by other states. However, we do not think we need reach that point in this case. The autopsy film was in black and white, shown without soundtrack. The pictures were in black and white. We have viewed

---

[1] The evidence shows that the only information the police officers had before questioning the defendants was what they heard from Mendonca. There is no evidence to show that the police officers were privy to any facts substantiating Mendonca's story as grounds to arrest the defendants without a warrant based upon probable cause. The questioning of the defendants was the first investigatory step taken to support or confirm the Mendonca story. Accordingly, whether the police officers possessed sufficient facts to arrest the defendants prior to the questioning, seems doubtful and they therefore were less likely to prevent the defendants from leaving the pool hall if they chose to do so. *(State v. Patterson, supra,* at 361.)

them all and while they are not pleasant, we cannot say they did not have essential evidentiary value in the circumstances of this case.

Appellants assert that the cause of death was not an issue. This is simply not so. The prosecution must prove every element of its case beyond a reasonable doubt and accordingly, must prove the cause of death and lay it at the door of the defendants. Here, the circumstances were that the body in question, by the time it was found, was badly decomposed. The opinion of the experts was that the victim died of a blow or blows to the head. It was impossible, because of the condition of the body, for the State to establish whether or not there were also possibly fatal wounds to the nonskeletal parts of the victim's anatomy. No one offered to stipulate that death came as a result of blows to the head. Thus, the State was left in the position of showing what evidence on the cause of death was available to it under the circumstances. Since the State has the burden of establishing its case and all the elements thereof beyond a reasonable doubt, we are not disposed to second guess the trial judge, who saw and heard all of the evidence, in determining how far the State should be permitted to go in the area of photographs of the victim's body or other exhibits including the autopsy film and the display of his skull.

Moreover, under the *Apao* test, the trial judge had to make a judgment as to probative value versus possible prejudicial effect. We cannot say he was wrong. Accordingly, we find no error in the admission of the evidence complained of.

Appellants also claim error in the denial of their motion for mistrial with respect to the testimony of Joseph D. Moniz. Moniz was called as a witness although he was not listed as such by the prosecution. After he had been testifying for some time, appellants' counsel realized that fact and objected. The court struck his testimony. The contention is that the court should have granted a mistrial. We find no abuse of discretion in the circumstances, particularly since any prejudicial effect of his testimony could have been prevented by appellants objecting to his testifying as soon as he was called to the stand.

The next group of claimed errors center about the attempts of appellants to discharge their counsel and of their counsel's attempts to withdraw from the case once it became apparent that Lendt had struck a deal with the prosecution and was going to testify against the appellants.

The arguments with respect to this matter are put forth in several varying forms: That counsel should have been permitted to withdraw; that the appellants should have been permitted to discharge their counsel; that the appellants should have been permitted to conduct their own defense; that the court erred in not giving them new counsel; that the court erred in not granting a longer continuance when it became apparent that Lendt would testify; that the appellants were deprived of their right to take the stand in their own behalf; that somehow they were deprived of their Sixth Amendment right of confrontation of other witnesses; that the court imposed upon appellants' counsel the duty of going forward with the case in violation of the canons of ethics; and that the court erred in not severing the cases against the various appellants.

To begin with, appellants were not denied the right to take the stand in their own defense. On the contrary, the transcript of the long argument over the withdrawal of counsel, at which the appellants were personally present, and in which they personally participated, makes clear that the appellants were informed and knew that they could take the stand in their own behalf.

Secondly, the statements of the appellants themselves during that hearing make clear that they did not wish to proceed pro se. The court informed them that one of the possibilities, if it granted the motion to withdraw, would be that they would have to proceed pro se and they stated in response thereto that they wanted a lawyer. As one of them said, to examine witnesses would be very difficult for him.

Thirdly, as to the matter of a continuance, it is apparent that a lengthy continuance was granted when it was learned that Lendt would testify for the prosecution. The granting and denial of continuances is, of course, a matter peculiarly within the discretion of the trial court and we see no abuse of discretion in the length of continuance granted.

As to the ethical argument, Disciplinary Rule 7-102 prohibits a lawyer from knowingly advancing a claim or defense unwarranted under law, knowingly using perjured testimony or false evidence, knowingly making a false statement of law or fact, participating in the creation or preservation of evidence when he knows or it is obvious that the evidence is false and knowingly assisting his client in conduct that is fraudulent.

Here, appellants' counsel, as required by Rule 12.1, HRPP, had set up the defense of alibi, giving notice thereof to the State; presumably counsel did so in good faith. Apparently, what happened was that although they believed the defense when it was asserted, the testimony of Lendt caused them to come to disbelieve their clients' story. They gave notice thereof to the court.

We see a vast difference between belief and knowledge, a difference which the law has always recognized. Thus, for example, there is a difference between an affidavit made upon personal knowledge and one made upon information and belief, well-recognized, and indeed, set forth in the very rules under which our courts operate.

Under our system of justice, every person accused of a crime is entitled to be represented by counsel. The canons of ethics were not designed to frustrate that right by forbidding court-appointed defense counsel to represent indigents even though he is skeptical of or downright disbelieves the story they propose to offer in defense unless that disbelief arises to the level of knowledge. The refusal to permit the withdrawal in this case did not require appellants' counsel to violate the canons of ethics and was well within the discretion of the court.

We see no constitutional issue in the court's refusal to permit appellants' counsel to withdraw or to permit appellants to discharge them or in not severing the three defendants' trials. Any course the court chose in the dilemma presented to it by the attempted discharge and withdrawal was fraught with peril for the appellants' rights because a change in counsel in midstream is bound to raise questions in the minds of the jury and might well be prejudicial to the defendants' interests.

As the Supreme Court of Hawaii has held, there is no per se right on the part of an indigent defendant to change counsel. *State v. Torres*, 54 Haw. 502, 510 P.2d 494 (1973). Whether to permit such change rests in the sound discretion of the trial court. In this case, the proposed change came at the end of the prosecution's case and toward the end of a long trial. We see no abuse of discretion in the court's refusing to allow the withdrawal and refusing to appoint new counsel and we see no merit in any of the errors urged in this connection.

The State had originally charged the appellants with conspiracy as well as with murder. After the trial was over, the conspiracy

charges were dropped but the court gave an instruction that all of the evidence could be considered in determining the guilt of the appellants of the crime of murder. No objection to this instruction was raised. Appellants now claim that its giving was plain error which we should notice despite the absence of an objection.

However, this case is governed by the holding of the Supreme Court of the State of Hawaii in *State v. Pulawa*, 58 Haw. 377, 569 P.2d 900 (1977). In that case at 58 Haw. 384, the Supreme Court stated:

> ... the rule is that a conspiracy may always be shown as an evidentiary fact to prove participation in the substantive crime, and a formal charge in the indictment is not a necessary predicate to the admissibility of facts and circumstances showing the existence of a conspiracy to commit the principal offense charged. The law is clear in this regard.

The alleged motive of the appellants in committing the crime was obviously a matter of relevance. Obviously also, there was ample evidence showing that the motive for this crime originated in a conspiracy which grew out of organized crime activities such as gambling. We see no prejudicial conduct in the linking of appellants to organized crime under the circumstances of this case.

Finally, appellants urge that it was error to forbid one of their counsel from using a chart in the course of arguing on the matter of reasonable doubt. Since it is the duty of the court to charge the jury on the applicable principals of law, it is obviously within the scope of the court's discretion to limit the amount by which counsel, during argument, may elaborate on those instructions. We see no abuse of discretion in the refusal of the court to allow a written chart in this particular case. The judgment below is affirmed.

*Jack F. Schweigert*, Special Deputy Public Defender, for appellant Kealohapauole.

*Irene Anzai (Howard K. Hoddick* and *Raymond Engle* on the briefs, *Hoddick, Reinwald, O'Connor & Marrack* of counsel) for appellant Palama.

*William C. McCorriston (Goodsill Anderson & Quinn* of counsel) for appellant Ah Lo.

*Jon R. Ono (Frederick Giannini* on the brief), Prosecuting Attorney, for appellee State of Hawaii.