*** NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER ***

**Electronically Filed
Supreme Court
SCAP-13-0000029
21-DEC-2015
08:48 AM**

SCAP-13-0000029

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---

STATE OF HAWAIʻI,
Plaintiff-Appellee,

vs.

FAALAGA TOMA,
Defendant-Appellant.

---

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-13-0000029; CR. NO. 11-1-0452)

---

MEMORANDUM OPINION
(By: Recktenwald, C.J., Nakayama, McKenna, and Pollack, JJ.,
and Circuit Judge Nacino, in place of Wilson, J., recused)

Part I (By: Nakayama, J., with whom Recktenwald, C.J.,
and Circuit Judge Nacino, join,
and Pollack, J., dissenting separately,
with whom McKenna, J., joins)

Part II (By: Pollack, J., with whom Recktenwald, C.J.,
and McKenna, J., join, and Nakayama, J., dissenting separately,
with whom Circuit Judge Nacino J., joins)

INTRODUCTION

This appeal arises out of defendant-appellant Faalaga

Toma's (Toma) conviction of assault in the second degree in the

Circuit Court of the First Circuit (circuit court). Toma was

charged with assault in the second degree on April 5, 2011.  At the end of trial, the circuit court allowed the jury to be instructed with accomplice liability over the defense's objection, and the jury found Toma guilty as an accomplice to the assault.  On appeal, Toma argues that the circuit court erred in giving the complicity instruction because the felony information charged him as a principal and did not give him adequate notice that he could be convicted as an accomplice.  He also argues that even if the jury instruction was properly given, there was insufficient evidence to support his conviction as an accomplice.

For the reasons set forth below, we vacate the circuit court's judgment of conviction, and remand this case for further proceedings.

A.  BACKGROUND

Around midnight on August 28, 2010, Michael Bodner (Bodner) and David Gunderson (Gunderson) arrived at Señor Frog's on the third floor of the Royal Hawaiian Shopping Center in Waikiki.  Bodner and Gunderson had just come from having drinks at the Yard House.  Toma's company, Top Flight Security, had been providing security to Señor Frog's since 2008.  On that night, Toma was acting as head of security, and the other security personnel were hired by Toma.

When Bodner and Gunderson approached the front of the

line, Francysco "Paco" Dardon Herrera (Paco), who was working as cashier, told them that they needed to pay a $10 cover charge to get in. Bodner explained that he did not have money but asked to use the restroom. Paco refused to let him in, and Bodner made a derogatory remark about people from Mexico. According to Paco, Bodner and Gunderson then pushed him. Other security members including Pita Funaki (Funaki) moved to take Bodner and Gunderson out of the foyer area.

Toma testified that while this was going on inside the foyer area, he was outside doing his usual rounds when he heard someone yell out that somebody had hit Paco. Toma then hit Gunderson who was the first person to exit the front doors of Señor Frog's. Funaki then yelled out, "No, that's not him. That's not him. It's this guy[,]" referring to Bodner. Toma immediately turned his attention to Bodner and slapped him. Funaki then punched Bodner, putting him on the ground.

Bodner's testimony contradicted Toma's testimony. Bodner testified that after he made the derogatory remark to Paco, he was grabbed from behind, punched, and dragged out of the foyer. He stated, "From my recollection, at that point, I was continuously beat. Other people were hitting me as well. I felt as if there were three individuals punching me." Bodner recalled that he was punched over fifteen times and his "head was ringing"

3

after he "got nailed in [the] face really hard." He stated, "And I -- that's what happens when you get knocked out. You kind of -- it clocked me really good. Threw off my equilibrium. I'm having trouble keeping balance." Bodner testified that Toma held him down and that three individuals repeatedly punched him. Bodner testified that Toma then grabbed him by the throat while other bouncers punched him.

Toma claimed that he was trying to move Bodner away from Señor Frog's and toward the escalator. Bodner and Gunderson testified that Toma pushed Bodner against a rail and began strangling him. Bodner was able to slide out of Toma's grasp, and Toma and at least one other person hit Bodner while other people who had come from inside Señor Frogs yelled and encouraged the fight. By this point there were "a lot of people out there watching the fight . . . . And everyone seemed to be egging the fight on and yelling things." Gunderson testified that people from the crowd may have "jumped in" and hit Bodner, and he stated that he was unable to distinguish who worked for the nightclub and who were customers of the nightclub.

Bodner testified that he fell to the ground where he was kicked by multiple people in the back, top of his head, and by Toma in his right eye. Gunderson testified that he saw Toma kick Bodner in the face, although he did not see precisely where

4

the kick landed.  Toma denied that he kicked Bodner.

The following morning, Bodner went to Queens Medical Center.  Bodner's face was swollen and puffy, and he learned that his nose was fractured.

On April 5, 2011, Toma was charged with Assault in the Second Degree via felony information which stated the following:

> On or about the 28th day of August, 2010, in the City and County of Honolulu, State of Hawaiʻi, FAALAGA TOMA did intentionally or knowingly cause substantial bodily injury to Michael Bodner, and/or did recklessly cause substantial bodily injury to Michael Bodner, thereby committing the offense of Assault in the Second Degree, in violation of Section 707-711(1)(a) and/or Section 707-711(1)(b) of the Hawaiʻi Revised Statutes.

1.    Circuit Court Proceedings[1]

During the settlement of jury instructions, the circuit court stated its intent to give a supplemental jury instruction regarding complicity.  The defense objected, arguing that Toma had not been charged as an accomplice, that there was no evidence of solicitation, and that giving the instruction would confuse the jury because Bodner claimed "he was assaulted at various locations, by various people, none of who he [could] identify." In response, the State argued that there was evidence of the defendant being an accomplice, specifically video evidence showing "an individual who's been identified by the State's witnesses as another bouncer, striking Mr. Bodner."  The State

---

[1]      The Honorable Rom A. Trader presided.

also argued that any confusion on the part of the jury would be cleared up by a unanimity instruction that would inform the jurors that they must unanimously agreed as to the person and act that caused Bodner's injury.

The circuit court overruled the defense's objection stating:

> The Court believes, notwithstanding the concerns raised by the Defense, that given the state of the evidence, there are multiple individuals that were alleged to be involved in this particular incident, who did or may have struck the complainant. And given the facts and circumstances, the Court does not necessarily agree that it's required to establish any sort of a relationship or knowledge, personal knowledge, with respect to the identity or specific individuals [sic] that might have been involved in this particular incident. And that, within the context of the additional instructions that the Court intends to give, the Court believes that, notwithstanding the objection that's been raised, that the giving of this instruction is not only appropriate, but required.

Defense counsel then asked the trial judge to identify the evidence on which the circuit court based its finding that Toma had solicited another person to commit the assault. The trial judge responded,

> [e]ssentially, as up to this point in time, there are number of circumstances. There are certainly a number of people that are there. There are a number of people that the evidence would support that there were statements [sic] being made by other individuals at about the time that Mr. Bodner is alleged to have been assaulted outside of the establishment.
>
> But as far as this specific testimony, the Court would simply note that, based upon the sum total of what's before the jury, that the solicitation aspect is nonetheless appropriate.

6

One of the State's proposed instructions on accomplice liability stated,

> Before you find Defendant Faalaga Toma guilty of any offense, you must unanimously agree that the offense was committed by the Defendant's own conduct or by the conduct of another person for which he is legally accountable or both and that the prosecution has proved the offense beyond a reasonably doubt.
>
> If you find the Defendant guilty, you will be asked to identify on a special verdict form whether you found that the offense was committed by the Defendant's own conduct or by the conduct of another person for which he is legally accountable or both.[2]

The circuit court amended the instruction to read as follows:

> Before you find Defendant Faalaga Toma guilty of any offense, you must unanimously agree that the offense was committed by the Defendant's own conduct or by the conduct of another person who you unanimously determine to be an accomplice of the Defendant or to whom the Defendant was an accomplice and that the prosecution has proved the offense beyond a reasonable doubt.
>
> If you find the Defendant guilty, you will be asked to identify on a special verdict form whether you found that the offense was committed by the Defendant's own conduct or by the conduct of another person who you unanimously determine to be an

---

[2] The circuit court's proposed modifications to this pattern instruction on accomplice liability are indicated below:

> [Y]ou will be asked on a special verdict form whether you found that the offense was committed by the Defendant's own conduct or by the conduct of another person ~~for which he is legally accountable or both.~~ and that the prosecution has proven the offense beyond a reasonable doubt
>
> [who you unanimously determine to be an accomplice of the D
>
> or
>
> to whom the D was an accomplice]

7

> accomplice of the Defendant or to whom the Defendant
> was an accomplice and that the prosecution has proven
> the offense beyond a reasonable doubt.

The reason for the court's modification does not appear in the record. Defense counsel objected with the following:

> We object, both for the reasons stated as to the
> accomplice instructions as a whole, and secondarily as
> to this specific instruction, because we also believe
> there needs to be included language as to the
> requirement that the jury unanimously determine not
> only an accomplice to the defendant, or to whom the
> defendant was an accomplice, but also the act that was
> committed by that person.

However, the circuit court gave the instruction as modified.

The verdict form consisted of two questions. The first question asked, "Did the jury unanimously find that the prosecution proved beyond a reasonable doubt that Defendant Faalaga Toma committed the offense by his own conduct?"[3] The verdict form then asked, "Did the jury unanimously find that the prosecution proved beyond a reasonable doubt that Defendant Faalaga Toma committed the offense by the conduct of another person who you unanimously determine to be an accomplice of the Defendant or to whom the Defendant was an accomplice?"[4]

---

[3] The jury indicated "No" as its response to the first question on the verdict form, concluding that the State had not proved Toma committed the offense by his own conduct.

[4] The jury answered "Yes" to the verdict form's second question incorporating the theory of accomplice liability from the court's modified instruction, and thus the form indicated that the jury found that the prosecution proved beyond a reasonable doubt that Toma was guilty based on "the conduct of another person who [the jury] unanimously determine[d] to be an accomplice of the Defendant or to whom the Defendant was an accomplice."

8

During deliberation, the jury submitted the following question to the court: "Could you explain the accomplice policy?" In response, the court instructed the jury to refer to all the instructions provided, specifically the ones pertaining to accomplice liability. Shortly thereafter, the jury reached a verdict. The jury found Toma guilty of Assault in the Second Degree (HRS § 707-711(1)(a) and/or § 701-711(1)(b)). According to the verdict form, the jury found that Toma did not commit the offense by his own conduct but found him guilty as an accomplice to the assault. See supra notes 3-4 and accompanying text. Toma was sentenced to five years of probation and the Judgment of Conviction of Probation Sentence was filed on December 18, 2012.

2. Toma's Appeal

On January 16, 2013, Toma filed a timely appeal to his conviction and sentence. After briefing was completed, Toma filed a timely application for transfer of the appeal from the ICA to this court on October 14, 2013. On November 13, 2013, this court issued an order granting discretionary transfer pursuant to HRS § 602-58(b). The transfer was accepted so that this court could address a purported inconsistency in its case law.[5]

---

[5] See infra Part I.1.

9

On appeal, Toma asserts two points of error: 1) "[t]he circuit court erred in instructing the jury with complicity because the State failed to provide adequate and fair notice to Toma by failing to allege complicity in the charging document[,]" and 2) there was insufficient evidence to find Toma guilty as an accomplice to the assault.

## B. STANDARDS OF REVIEW

### 1. Sufficiency of a Charge

"'Whether [a charge] sets forth all the essential elements of [a charged] offense . . . is a question of law[,]' which we review under the de novo, or 'right/wrong,' standard.'" State v. Wheeler, 121 Hawaiʻi 383, 390, 219 P.3d 1170, 1177 (2009).

### 2. Sufficiency of Evidence

"On appeal the test to determine the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the State, there is substantial evidence to support the conclusion of the trier of fact." State v. Ildefonso, 72 Haw. 573, 576, 827 P.2d 648, 651 (1992). "It matters not if a conviction under the evidence as so considered might be deemed to be against the weight of the evidence so long as there is substantial evidence tending to support the requisite findings for the conviction." State v. Tamura, 63 Haw. 636, 637, 633 P.2d

10

1115, 1117 (1981).  "'Substantial evidence' . . . is credible evidence which is of sufficient quality and probative value to enable a man of reasonable caution to reach a conclusion."  State v. Naeole, 62 Haw. 563, 565, 617 P.2d 820, 823 (1980).

3.   Jury Instructions

"When jury instructions . . . are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading."  State v. Nichols, 111 Hawaiʻi 327, 334, 141 P.3d 974, 981 (2006).

PART I: THE CIRCUIT COURT DID NOT ERR IN GIVING THE JURY AN ACCOMPLICE LIABILITY INSTRUCTION, AND THERE WAS SUBSTANTIAL EVIDENCE TO SUPPORT TOMA'S CONVICTION.
(By: Nakayama, J., with whom Recktenwald, C.J., and Circuit Judge Nacino, join)

1.   The Court did not err in giving the jury a complicity liability instruction because Apao is controlling.

Toma argues that the circuit court erred in instructing the jury with complicity because the State did not charge or allege sufficient facts to put him on notice that he may be liable as an accomplice.  Therefore, Toma argues that the jury instruction and his subsequent conviction violated his state and federal constitutional rights to adequate and fair notice.  Toma further asserts that although State v. Apao, 59 Haw. 625, 586 P.2d 250 (1978), is controlling, it is ripe for review in light

11

of this court's holding in State v. Wheeler, 121 Hawaiʻi 383, 219 P.3d 1179 (2009).

The State argues that pursuant to Apao and the Hawaiʻi Penal Code, there are no distinctions between principals and accessories, and charging a defendant as a principal is sufficient to put him/her on notice that he/she may be convicted as an accomplice. The State also contends that because it was clear that there were others involved in the incident who were under Toma's supervision and who shared his motivations and purpose, Toma had sufficient notice that he could be liable as an accomplice.

As set forth below, the circuit court did not err in giving the jury a complicity liability instruction because it was proper to do so under Apao.

A. The circuit court did not err in giving the jury an instruction on complicity under Apao.

In Apao, the defendant was found guilty of murder following a grand jury indictment that stated:

> On or about the 20th day of July, 1974, in the City and County of Honolulu, State of Hawaiʻi, ROY AIU APAO did intentionally or knowingly cause the death of Faafouina Tuaolo, a person known by Roy Aiu Apao to be a witness in a murder prosecution, by beating the said Faafouina Tuaolo, thereby committing the offense of murder in violation of Section 701 and 606(a)(ii) of the Hawaiʻi Penal Code, Act 9, Session Laws of Hawaiʻi, 1972.

59 Haw. at 627, 586 P.2d at 253. At trial, three witnesses who

12

were with Apao and the victim testified and gave conflicting accounts as to the extent of each person's participation in the killing. Id. at 630-33, 586 P.2d at 255-56. Near the end of trial, the jury was instructed with the law of principals and accomplices over the defense's objection. Id. at 630, 586 P.2d at 255.

On appeal, Apao argued that the giving of such instruction was reversible error because the indictment did not specify whether he was being charged as a principal or an accomplice. Id. at 644, 586 P.2d at 262. This court disagreed with Apao and cited to Sections 702-221 through 702-223 of the Hawaiʻi Revised Statutes (HRS). Id. at 644-45, 586 P.2d at 262-63. HRS § 702-221 states that a person can be guilty of an offense if he/she commits the offense by his/her own conduct or if he/she is an accomplice to another person in the commission of the offense. This court further noted that the commentary to § 702-221(1) clarified that "[d]istinctions between principals and accessories are dispensed with and a defendant may be convicted directly of an offense committed by another for whose conduct the defendant is accountable." As to Apao's claim that he was not able to prepare a proper defense because the indictment did not provide whether he was being charged as a principal or an accomplice, this court noted that other jurisdictions have held

13

that "when the indictment charges a defendant as principal, it is not error for the court to instruct the jury that under the facts of a particular case, the defendant may be guilty as an aider and abetter." Apao, 59 Haw. at 645-46, 586 P.2d at 263. The court concluded that given testimony regarding Apao's participation in the events surrounding the killing, there was sufficient proof to support the indictment, and the jury instruction was proper. Id. at 646, 586 P.2d at 263.

When Apao is applied to the instant case, the circuit court did not err in giving the complicity instruction. Like Apao, Toma could be convicted as an accomplice in the commission of the assault, even though the felony information charged him as a principal. In fact, Toma does not dispute that Apao is on point and controlling in this case, nor does he dispute that the circuit court did not err if Apao is still good law. Instead, Toma argues that Apao should be overturned because it is inconsistent with Wheeler and its progeny. ("Although State v. Apao . . . addressed this issue 35 years ago, in light of the more recent decisions of State v. Wheeler . . . and its progeny, Apao is not only ripe for review, but under the current case law, it must be overturned.").

14

B.     Apao remains good law because it is not inconsistent
       with Wheeler and comports with notice requirements.

Toma argues that "[i]n the last 35 years since Apao, there have been momentous changes in the Hawai'i and the United States Supreme Courts's jurisprudence regarding notice in charging . . . [and] Apao is irreconcilable with these cases." However, Toma fails to recognize that while these recent cases have clarified notice requirements, they have not changed the existing law in this area that pre-dates Apao.  Additionally, because a charge as a principal gives a defendant sufficient notice of what he must defend against, Apao is not inconsistent with these cases and meets constitutional requirements.

In Wheeler, this court held that an oral charge of operating a vehicle under the influence of an intoxicant (OVUII) was insufficient because it did not allege that the defendant operated his vehicle upon a public way, street, road, or highway which the court found to be an element of the offense.  121 Hawai'i at 393, 219 P.3d at 1180.  However, while Toma asserts that Wheeler was part of a "momentous change" in case law regarding notice in charging, the court in Wheeler relied on older, pre-existing case law in rendering its decision.  The court cited to State v. Jendrusch, 58 Haw. 279, 281, 567 P.2d 1242, 1244 (1977), a case decided two years before Apao, for the

15

rule that "an 'accusation must sufficiently allege all of the essential elements of the offense charged,' a requirement that 'obtains whether an accusation is in the nature of an oral charge, information, indictment, or complaint[.]'" Wheeler, 121 Hawaiʻi at 391, 219 P.3d at 1178. Therefore, although Wheeler was decided many years after Apao, it was decided under principles of law that already existed when Apao was decided.

Furthermore, since the time that Toma's Application for Transfer was granted, this court decided State v. Acker in which it upheld the rule that a defendant may properly be convicted as an accomplice even though he/she was only charged as a principal. 133 Hawaiʻi 253, 327 P.3d 931 (2014). Therefore, despite Toma's arguments that the court should revisit Apao and that Apao has been implicitly overturned by Wheeler, this court has clearly declined to do so and has disagreed with Toma.

Toma also argues that because he was not charged with complicity, he was not given "adequate and fair notice, as guaranteed under Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, §§ 5 and 14 of the Hawaiʻi Constitution." Article I, § 14 of the Constitution of the State of Hawaiʻi and the Sixth Amendment of the Constitution of the United States contain identical language stating that "[i]n all criminal prosecutions, the accused shall enjoy the

16

right . . . to be informed of the nature and cause of the accusation."  In addressing this constitutional right, the court in Wheeler noted that "[the Hawaiʻi Supreme Court's] analysis of charges under the Hawaiʻi constitution has focused on whether the language actually used in the charge provides fair notice to the defendant."  121 Hawaiʻi at 394, 219 P.3d at 1181.  The court then concluded that the oral charge was deficient because it did not provide adequate notice to Wheeler that the State was required to prove that he had operated the vehicle on a public road as an element of an OVUII offense.  Id. at 395, 219 P.3d at 1182.

Other cases analyzing the sufficiency of a charge have also focused on whether the charge provides the defendant fair notice of the nature and cause of the alleged offense.  See, e.g., State v. Nesmith, 127 Hawaiʻi 48, 56, 276 P.3d 617, 625 (2012) (charge insufficient for failing to include intentional, knowing, or reckless state of mind requirements because omission does not inform defendant that negligently operating a vehicle under the influence of an intoxicant is not an offense under HRS § 291E-61(a)(1)); State v. Mita, (charge sufficient even though statutory definition of "animal nuisance" was not alleged because the definition did not create any additional elements of the offense, and the definition is consistent with its commonly

17

understood meaning so that defendant had fair notice of the offense charged); State v. Israel, 78 Hawaiʻi 66, 72, 890 P.2d 303, 309 (1995) (charge did not adequately inform defendant of the nature and cause of Possession, Use or Threat to Use a Firearm in the Commission of a Felony offense because the underlying felony was not alleged); State v. Jendrusch, 58 Haw. 279, 281-82, 567 P.2d 1242, 1244-45 (1977) (charge was insufficient for failing to allege all of the essential elements of the offense charged and was, therefore, a denial of due process).

In the present case, the felony information sufficiently charged Toma with Assault in the Second Degree under HRS § 707-711(1)(a) and/or (b). Toma does not contest that the felony information provided him with adequate notice as to the charge of assault. He instead seems to argue that charging a defendant under HRS § 707-711, without more, is only sufficient to charge him/her as a principal. He asserts that assault as a principal and assault as an accomplice are different "offenses [that] are separately codified and encompass different elements." Toma, therefore, contends that the felony information needed to "adequately inform Toma of the elements and essential facts of complicity to Assault in the Second Degree."

However, Toma's argument fails for the same reason that

18

Apao and Wheeler are not inconsistent: assault as a principal and assault as an accomplice are not separate offenses but different theories of liability for the same offense.  Accomplice liability does not need to be charged to comply with notice requirements because it is not a crime but a theory of culpability.  Strong v. Dragovich, No. Civ. A. 00-5058, 2006 WL 1517343, at *5 (E.D. Penn. May 31, 2006).  Although complicity and assault in the second degree are codified in different HRS chapters, complicity is in Chapter 702, titled "General Principles of Penal Liability," and there are no specific criminal offenses contained in that chapter.  Assault in the second degree, on the other hand, is one of the specific criminal offenses in Chapter 707, titled "Offenses Against the Person."  Therefore, even the organization of HRS suggests that complicity is not an offense.  This is also evidenced by the fact that a defendant cannot be guilty as an accomplice unless the jury finds that a principal committed an underlying offense.  See State v. Keaweehu, 110 Hawaiʻi 129, 134, 129 P.3d 1157, 1162 (App. 2006) (jury instruction needed to "sufficiently advise[] the jury that the charged offense must have been committed for the defendant to be an accomplice").

Thus, Toma could be convicted as an accomplice even though he was charged as a principal because the charge gave him

19

adequate notice of the nature and cause of the alleged offense, assault in the second degree.  See Apao, 59 Haw. at 645-46, 586 P.2d at 263 (citing State v. Cooper, 26 Wash. 2d 405, 174 P.2d 545 (1946)) (specifically noting the Washington Supreme Court's holding that "the defendant was sufficiently put on notice when he was charged as a principal in the indictment, and the [trial] court did not err in instructing the jury on the theory of 'aiding and abetting.'").  Neither Hawaiʻi case law nor the Hawaiʻi and United States constitutions require more.[6]

---

[6]    The dissent argues that our analysis here is flawed because charging a defendant as a principal does not necessarily provide a defendant with sufficient notice that he/she must also be prepared to defend against accomplice liability, and our case law demonstrates this by considering the facts of each case to determine whether or not the defendant had sufficient notice of accomplice liability.  Dissent at 2-3.  In support of this argument, the dissent cites to State v. Soares, 72 Haw. 278, 815 P.2d 428 (1991), and asserts that "Soares demonstrates that charging a defendant as a principal is not necessarily sufficient to provide the defendant with adequate notice of the charges as constitutionally required by both the Hawaiʻi and federal constitutions."  Dissent at 5.  In Soares, this court held that the jury was improperly instructed with accomplice liability because "under the circumstances . . . , where each defendant is charged separately and each charge involves different facts with different victims, an accomplice instruction should not have been given."  72 Haw. at 281, 815 P.2d at 430.  However, Soares is distinguishable from this case because the different facts and victims in Soares made the charges two separate offenses.  Therefore, the Soares court was not addressing different theories of liability, but a scenario in which the defendants could have been convicted of an offense that they were never charged with.  This is clearly distinguishable from and inapplicable to the present case where Toma was convicted of the offense he was charged with.

The dissent also relies on State v. Fukusaku, 85 Hawaiʻi 462, 946 P.2d 32 (1997), and asserts that "even after discounting the necessity for notice of accomplice liability in the charging instrument, [the court] discussed the facts and circumstances of the case to demonstrate that the defendant did have notice that he could be charged with complicity."  Dissent at 6.  The defendant in that case had alleged that the prosecution had indicated that it would not be pursuing accomplice liability and, thus, he had no notice that accomplice liability was still a possibility.  Fukusaku, 85 Hawaiʻi at 55-57, 946 P.2d at 485-87.  Therefore, the court needed to recount
(continued...)

For the foregoing reasons, <u>Apao</u> is not outdated or inconsistent with current case law regarding notice requirements for charging documents.

    C.    <u>Apao</u> is consistent with how other state and federal jurisdictions treat principal and accomplice liability.

Other state and federal jurisdictions have also held that a defendant who is indicted as a principal to an offense may be properly convicted as an accomplice.

Like HRS § 702-221, 18 U.S.C. § 2 states that there are no distinctions between principals and accomplices because "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." Federal courts have also long recognized that charging a defendant as a principal and convicting him as an accomplice does not violate the Sixth Amendment, which contains identical language to Article I, § 14 of the Hawaiʻi state constitution regarding notice requirements for charging documents. <u>See, e.g.</u>, <u>United States v. Moore</u>, 936 F.2d 1508, 1526 (7th Cir. 1991) ("It is unnecessary that an

_____

[6](...continued)
the facts presented and events at trial to show that the "[d]efendant's claim that accomplice liability was precluded by the Prosecution's assurances [was] unsupported by the record." <u>Id.</u> at 56, 946 P.2d at 486. Although the court needed to address these facts and circumstances in order to dispose of Fukusaku's allegations of unfairness or surprise, this court did not hold that such an analysis is necessary absent such allegations of assurances made by the prosecutor.

21

indictment specifically charge aiding or abetting."); <u>United States v. Kegler</u>, 724 F.2d 190, 201 (D.C. Cir. 1983) ("An aiding and abetting instruction may be given in a case where the indictment does not allege violation of the aiding and abetting statute."); <u>United States v. McCambridge</u>, 551 F.2d 865, 871 (1st Cir. 1977) ("It is well settled that even though a defendant is indicted solely for commission of a substantive offense, he may be convicted as an aider and abettor even if not designated as such in the indictment."); <u>United States v. Good Shield</u>, 544 F.2d 950, 952 (8th Cir. 1976) ("The indictment may charge a defendant as a principal, and need not specifically allege that he aided and abetted in the commission of the crime."); <u>Pang v. United States</u>, 209 F.2d 245, 246 (9th Cir. 1953) (rejecting the argument that the law requires that a defendant be charged as an aider or abettor in the indictment if he/she is to be tried as such).

Moreover, the vast majority of states that have addressed this issue also follow the same approach. <u>See, e.g.</u>, <u>Baker v. State</u>, 905 P.2d 479, 489 (Alaska Ct. App. 1995); <u>Whitson v. State</u>, 109 So. 3d 665 (Ala. Crim. App. 212); <u>State v. McInelly</u>, 704 P.2d 291 (Ariz. Ct. App. 1985); <u>Holsombach v. State</u>, 246 S.W.3d 871 (Ark. 2007); <u>Johnson v. State</u>, 215 A.2d 247 (Del. 1965); <u>State v. Shackelford</u>, 247 P.3d 582 (Idaho 2010); <u>People v. Ceja</u>, 789 N.E.2d 1228 (Ill. 2003); <u>State v. Barton</u>, 702

22

A.2d 336 (N.H. 1997); People v. Rivera, 646 N.E.2d 1098 (N.Y. 1995); State v. Burney, 82 P.3d 164 (Or. Ct. App. 2003); Com. v. Perkins, 401 A.2d 1320 (Pa. 1979); State v. Dickman, 534 S.E.2d 268 (S.C. 2000); State v. Johnston, 933 P.2d 448 (Wash. Ct. App. 1997).

Therefore, because the rule from Apao is the prevailing view in this country, and it does not raise notice issues, this court should reject Toma's argument that it should be overturned.

2. There was sufficient evidence to support the jury's finding that Toma acted as an accomplice.

In Toma's second point of error, he argues that even if the trial court did not err in instructing the jury with complicity, his conviction must be reversed because there was insufficient evidence to support it. He argues that HRS § 702-222(1) requires that a defendant have "the intention of promoting or facilitating the commission of the offense" to be liable as an accomplice and that he did not have this requisite intent because his intent was to get Bodner to leave, not to commit assault in the second degree. He also argues that there was no evidence that he solicited, aided, or attempted to aid any of the multiple individuals who also hit Bodner.

In response, the State argues that although it needed to prove that Toma intentionally promoted or facilitated the

23

commission of the assault, only a reckless state of mind was required to be proven as to the result of serious bodily injury. The State also contends that because there was evidence that Toma had hired the other security personnel at Señor Frog's, that the security personnel were working in concert during the incident, and that Toma immediately turned his attention to Bodner and slapped him after Funaki said "It's this guy[,]" there was proof that Toma and Funaki were working as a team and that Toma acted with intent to engage his team to hit and kick Bodner.

Toma's argument that "there must be proof that [he] intended to cause or facilitate Bodner's nose being fractured and that he 'aided or agreed or attempted to aid another person in planning or committing' the nose fracture" is without merit.  HRS § 707-223 states that:

> [w]hen causing a particular result is an element of an offense, an accomplice in the conduct causing the result is an accomplice in the commission of that offense, if the accomplice acts, with respect to that result, with the state of mind that is sufficient for the commission of the offense.

Therefore, because HRS § 707-711(b) states that a person commits assault in the second degree if "[t]he person recklessly causes serious bodily injury to another person[,]" it does not matter whether Toma actually intended to cause serious bodily injury to Bodner, as long as he solicited, aided, or attempted to aid the principal in attacking Bodner while disregarding known risks that

24

serious bodily injury could result.[7]  And because there was evidence that Toma and Funaki were working together, that Funaki hit Bodner with a running punch after Toma slapped him around, that Funaki said, "It's this guy[,]" and that Toma participated with others in further beating Bodner and kicking him, there was sufficient evidence that he solicited, aided, or attempted to aid the others in committing assault in the second degree.

DATED:  Honolulu, Hawaiʻi, December 21, 2015.

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Edwin C. Nacino



PART II: THE CIRCUIT COURT'S ACCOMPLICE INSTRUCTION AFFECTED TOMA'S SUBSTANTIAL RIGHTS AND DENIED HIM A FAIR TRIAL.
(By: Pollack, J., with whom Recktenwald, C.J.,
and McKenna, J., join)

In his application for writ of certiorari, Toma argues that the circuit court's jury instructions regarding accomplice liability "did not clearly or adequately convey the proper instructions and were therefore, prejudicially insufficient, erroneous, and misleading thereby violating Toma's constitutional rights to a fair trial and due process."  The circuit court

_____

[7]    The commentary to HRS § 702-223 gives the following example:

[O]ne who urges a driver to increase the speed of an automobile, disregarding known risks to pedestrians, would stand in the same position as the driver on a charge of reckless homicide and would not be allowed to defend on the ground that one solicited the violation of the traffic law and not the homicide law.

instructed the jury that they could convict Toma of the assault charge if Toma was the accomplice of the person who committed the assault or if the person who committed the assault was an accomplice of Toma. The latter alternative in the court's instruction permitted the jury to convict Toma on a theory of criminal liability that is not recognized by our law and thus affected Toma's substantial rights and was not harmless beyond a reasonable doubt.

1.    The Circuit Court's Alternative Theory of Accomplice
      Liability is Not Recognized by Hawaiʻi Law.

        Under Hawaiʻi law, a person is guilty of an offense "if it is committed by the conduct of another person for which he is legally accountable; such accountability arises when he is an accomplice to the perpetrator in the commission of the offense." State v. Hernandez, 61 Haw. 475, 480, 605 P.2d 75, 78 (1980); see also HRS § 702-221 (1993).

        Accomplice liability is a limited theory of liability that focuses on the accused's conduct establishing complicity. See HRS § 702-222 cmt. Accomplice liability is set forth in HRS § 702-222 (1993), which provides as follows:

> A person is an accomplice of another person in the commission of an offense if:
>
> (1) With the intention of promoting or facilitating the commission of the offense, the person:
>
>   (a) Solicits the other person to commit it; [or]

26

> (b) Aids or agrees or attempts to aid the other person in planning or committing it . . . .

Thus, the requisite intent of an accomplice to promote or facilitate the commission of the offense is premised on the accomplice's objective to bring about the conduct that forms the basis for the charge, that is, the principal's conduct. See State v. Basham, 132 Hawaiʻi 97, 109, 319 P.3d 1105, 1117 (2014) (discussing the meaning of "intention of promoting or facilitating the commission of the offense"); State v. Mikasa, 111 Hawaiʻi 1, 6, 135 P.3d 1044, 1049 (2006) ("A principal is the person that commits the crime."). Thus, HRS § 702-222 requires proof of conduct establishing complicity--solicitation, aiding, agreeing to aid, or attempting to aid--"[w]ith the intention of promoting or facilitating the commission of the offense."

The circuit court's modification to the State's proposed jury instruction in this case reflects a critical misunderstanding of accomplice liability. The circuit court instructed the jury that Toma could be found guilty if Toma was an accomplice of the principal or if the principal was an accomplice of Toma:

> Before you find Defendant Faalaga Toma guilty of any offense, you must unanimously agree that the offense was committed by the Defendant's own conduct or by the conduct of another person who you unanimously determine to be an accomplice of the Defendant or to whom the Defendant was an accomplice and that the prosecution has proved the offense beyond a reasonable doubt.

27

(Emphasis added). Consequently, the court submitted a theory of criminal liability to the jury that Toma could be found guilty based on another person being both the principal and the accomplice for the offense. The court did so unprompted by the State and over the objection of defense counsel.

The circuit court's accomplice liability theory, allowing for conviction based on the principal being an accomplice, is directly contrary to HRS § 702-222--which provides that a person is an accomplice based on his or her own intent and conduct demonstrating complicity. The commentary to HRS § 702-222 states, "The Code avoids the vague concept of conspiracy in basing penal liability on the conduct of another, and focuses instead on the conduct of the accused which is sufficient to establish the accused's complicity." See HRS § 702-222 cmt. The commentary to Model Penal Code § 2.06 (Proposed Official Draft 1962)--from which accomplice liability under HRS §§ 702-221 and 702-222 is derived[11]--makes the same observation. See Model Penal Code § 2.06 cmt. 4.(a) (providing that the most important point of divergence from the common law with regard to accomplice liability is that "it does not make 'conspiracy' as such a basis of complicity in substantive offenses committed in furtherance of its aims"). In rejecting the conspiracy model, the HRS and Model

_____

[11] See HRS vol. 7A app. 3 (1976) (table of derivation).

28

Penal Code formulation of accomplice liability "asks, instead, more specific questions about the behavior charged to constitute complicity, such as whether the defendant solicited the commission of the particular offense or whether he aided, or agreed or attempted to aid, in its commission."  Id.  "The reason for this treatment is that there appears to be no better way to confine within reasonable limits the scope of liability to which conspiracy may theoretically give rise."  Id.

Therefore, it would be contrary to HRS § 702-222 to find Toma guilty of an offense because another person was his accomplice.  Such a result would allow the jury to convict Toma based on another person's intention of promoting or facilitating the commission of the offense and the other person's conduct demonstrating complicity.  Under our law, Toma can only be legally responsible for the assault as an accomplice if the State demonstrates that Toma solicited, aided, agreed to aid, or attempted to aid another person with the intention of promoting or facilitating the commission of the offense.  HRS § 702-222.  The circuit court's theory that accomplice liability may be premised on the principal being an accomplice of the defendant is an expansion of accomplice liability neither prescribed nor authorized under HRS § 702-222.

29

2.     Hawaiʻi Law Precludes Judicial Establishment of a Theory of Criminal Liability.

As discussed, the circuit court's theory of accomplice liability in this case is not recognized by Hawaiʻi law. This unfounded expansion of accomplice liability amounts to judicial establishment of a theory of criminal liability. Such judicial expansion of the law is directly contrary to Hawaii's comprehensive criminal statutory scheme, which precludes common-law offenses and theories of criminal liability.

It has long been "observed that there are no common-law offenses in Hawaiʻi." Territory v. Rogers, 37 Haw. 566, 567 (Haw. Terr. 1947). In 1972, this basic principle was enacted into law; HRS § 701-102(1) (1993) provides, "No behavior constitutes an offense unless it is a crime or violation under this Code or another statute of this State." The commentary to HRS § 701-102 notes that despite the clear rule against common-law offenses, "it appears wise to enact specifically that no behavior is penal unless it is made so by this Code or by another statute." HRS § 701-102 cmt[12] (Emphasis added).

In State v. Yamamoto, 98 Hawaiʻi 208, 46 P.3d 1092

---

[12]     HRS § 701-102 was derived from Model Penal Code § 1.05. See HRS vol. 7A app. 3 (1976) (table of derivation). The commentary to Model Penal Code § 1.05 is in accordance with the commentary to HRS § 701-102(1). The Model Penal Code commentary explains that "[t]here can be no justification for preserving common law offenses once a comprehensive penal code is enacted." Model Penal Code § 1.05 cmt. 2.

30

(App. 2002), the trial court erroneously instructed the jury with regard to one of the elements of kidnapping by stating, "Terrorize means the *risk* of causing another person serious alarm for his or her personal safety." 98 Hawaiʻi at 217, 46 P.3d at 1101. The inclusion of the word "risk" was error because the kidnapping statute required the intent to "[t]errorize that person or a third person," not the intention of the "mere risk of causing another person serious alarm." Id. The Yamamoto court cited to HRS § 701-102(1) in support of its conclusion that a conviction based on the defendant's "mere risk" of terrorizing the victim was "not the statutory crime, and hence, no crime at all." Id. at 219, 46 P.3d at 1103; cf. State v. Kaakimaka, 84 Hawaiʻi 280, 295, 933 P.2d 617, 632 (1997).[13]

The instruction in this case, like the erroneous instruction in Yamamoto, instructed the jury in a manner that is unfounded in statutory law. The circuit court's theory of accomplice liability is not a statutory theory of liability as it

---

[13] In Kaakimaka, the prosecution attempted to extend the three year statute of limitations for conspiracy to commit second degree murder based on "concealment of the murder" as being an "original objective of the murder." Id. at 292, 933 P.2d at 629. However, the court concluded that "the conspiratorial objective must constitute an offense enumerated within the Code," and the prosecution did not cite to any section of the code in its indictment prohibiting "concealment." Id. at 293, 933 P.2d at 630. The court found that "[b]ecause the 'concealment' objective is not an enumerated offense within the Code, the defendants have not been notified, as due process requires, of any cognizable objective of the conspiracy that could extend the limitations period." Id. at 295, 933 P.2d at 632.

31

is not premised on the definition of accomplice liability found in HRS § 702-222, and, thus, it is "no crime at all." Id. at 219, 46 P.3d at 1103. The circuit court instructed the jury that it could find Toma guilty of the charged offense if another person was an accomplice of him, even though HRS § 702-222 requires Toma to have the requisite intent to promote or facilitate the commission of the offense and to engage in conduct demonstrating complicity.

A jury instruction that violates the prohibition in HRS § 701-102, by submitting to the jury a common law theory of criminal liability, also raises significant due process concerns, for a criminal justice system that requires criminal liability to be statutorily defined is "a dictate of fundamental fairness." See HRS § 701-102 cmt.[14]

3. Unforeseeable Judicial Enlargement of a Theory of Criminal Liability Violates Fundamental Constitutional Rights.

Because the flawed jury instruction in this case went far beyond the definition of "accomplice liability," it expanded the scope of Toma's criminal liability in a way that Toma could not have anticipated. Such an "unforeseeable and retroactive judicial expansion of narrow and precise statutory language"

---

[14] The Model Penal Code commentary also points to "vagueness of the common law offenses" as another point of concern and criticism of common law offenses. Model Penal Code § 1.05 cmt. 2.

32

deprives a defendant of the right to fair notice under the Due Process Clause of the United States Constitution and article 1, section 5 of the Hawai'i Constitution. See Bouie v. City of Columbia, 378 U.S. 347, 352 (1964); Garcia v. State, 125 Hawai'i 429, 437-38, 263 P.3d 709, 717-18 (2010) (noting unexpected judicial reformation of the law violates the principle of fair warning); State v. Jess, 117 Hawai'i 381, 408, 184 P.3d 133, 160 (2008) (same). Additionally, the circuit court's expansion of criminal liability by its jury instructions on the law deprived Toma of an adequate opportunity to defend against the uncharged accusation and derogated his right to a fair trial.[15]

Of further gravity, "judicial enlargement of a criminal act by interpretation is at war with a fundamental concept of the common law that crimes must be defined with appropriate definiteness." Bouie, 378 U.S. at 352; see State v. Alangcas, No. SCWC-30109, 2015 WL 518274, at *11 (Haw. Feb. 9, 2015, Feb. 20, 2015); State v. Beltran, 116 Hawai'i 146, 151, 172 P.3d 458, 463 (2007). The United States Supreme Court has stated that

---

[15] "The due process guarantee of the . . . Hawaii constitution[] serves to protect the right of an accused in a criminal case to a fundamentally fair trial. Central to the protections of due process is the right to be accorded a meaningful opportunity to present a complete defense." State v. Kaulia, 128 Hawai'i 479, 487, 291 P.3d 377, 385 (2013) (alteration in original) (quoting State v. Matafeo, 71 Haw. 183, 185, 787 P.2d 671, 672 (1990)) (internal quotation marks omitted); Crane v. Kentucky, 476 U.S. 683, 690 (1986) ("[T]he Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense.").

"unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law," and the Court reasoned that "[i]f a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction."  Bouie, 378 U.S. at 353-54.

By instructing the jury in a manner that judicially expanded accomplice liability, the circuit court enlarged HRS § 207-722 in a manner completely unforeseeable to Toma and retroactively charged an unfounded theory of accomplice liability to Toma's previous conduct.  "Our system of laws assumes that a person must choose between lawful and unlawful conduct, so we require that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he or she may act accordingly."  State v. Kaneakua, 61 Haw. 136, 138, 597 P.2d 590, 592 (1979).

This "fundamental principle that 'the required criminal law must have existed when the conduct in issue occurred,'" applies "to bar retroactive criminal prohibitions emanating from courts."  Bouie, 378 U.S. at 353 (quoting Hall, General Principles of Criminal Law 58—59 (2d ed. 1960)).  Because HRS § 702-222 and our case law applying accomplice liability could not

34

possibly have put Toma on notice with regard to the circuit court's erroneous theory of accomplice liability, the jury instruction violated Toma's federal and state due process rights and deprived Toma of a fair trial and his right to prepare and present a defense. This denial of Toma's due process and fair trial rights affected his substantial rights.[16]

4.  Flawed Accomplice Instruction Failed to Require Proof of a Culpable State of Mind or Conduct.

The circuit court's misstatement of accomplice liability in its instruction to the jury also implicates the most basic statutory requirements for proof of accomplice liability. Under Hawaiʻi law, a person may not be convicted of an offense unless each element of the offense and the state of mind required to establish each element of the offense is proved beyond a reasonable doubt. HRS § 701-114 (1993).

In State v. Aganon, 97 Hawaiʻi 299, 36 P.3d 1269 (2001), this court found that a jury instruction, which instructed a jury that it only needed to find the requisite state of mind as to one of three elements, constituted plain error. The defendant in Aganon was charged with the offense of murder in

_____

[16]   See State v. Miller, 122 Hawaiʻi 92, 101, 223 P.3d 157, 166 (2010) (recognizing appellate review under the plain error standard is appropriate where trial court error "implicates" "due process" (quoting State v. Adams, 76 Hawaiʻi 408, 414, 879 P.2d 513, 519 (1994)).

35

the second degree under HRS § 702-205 (1993), which required proof that the defendant acted intentionally or knowingly with respect to each of the three elements of the offense. 97 Hawaiʻi 302, 36 P.3d at 1273. The court instructed the jury that the three elements must have been committed by the defendant "intentionally or knowingly," and the court proceeded to define what "intentionally" and "knowingly" meant respectively in the context of each element of the offense. Id. at 301-02; 36 P.3d at 1272-73. In response to a communication sent by the jury in deliberation, the court erroneously instructed the jury that it was sufficient if the jury unanimously agreed that the defendant had the requisite state of mind for one of the three elements. Id. at 302; 36 P.3d at 1273. This court held that the error adversely affected the defendant's substantial rights and constituted plain error because the jury could have found the defendant guilty without finding the requisite state of mind for each element of the offense. Id. at 303; 36 P.3d at 1273.

In this case, the circuit court crafted an instruction that advised the jury that it could find Toma guilty if he was an accomplice of the principal or if the principal was an accomplice of him, even though HRS § 702-222 requires proof that the defendant had the prescribed intent and engaged in the requisite conduct to establish complicity as an accomplice. This

36

instruction may have led to the absurd result that the jury found Toma guilty of the offense entirely based on a finding of another person's conduct and intent to be an accomplice of Toma.

Thus, the instruction in this case goes much farther than the erroneous jury instruction in <u>Aganon</u>--which erred by not requiring the requisite mental state of the defendant be proven for each element--by not requiring any proof that Toma had the requisite mental state or that he exhibited conduct demonstrating his complicity.  The instruction in this case made it possible that the jury's finding of guilty was premised entirely on the intent and conduct of another person.  Accordingly, the circuit court's theory of accomplice liability was in direct contravention of HRS § 701-114's requirement that the State prove the requisite state of mind as defined in HRS § 702-222.

5.   The Erroneous Jury Instructions Adversely Affected Toma's Substantial Rights Necessitating Exercise of this Court's Authority to Recognize Plain Error.

As stated, the circuit court's unfounded theory of accomplice liability deprived Toma of due process under the United States Constitution and the Hawaiʻi Constitution, and it also violated basic principles of our criminal law requiring criminal theories of liability to be statutorily defined and proven.

The jury instructions with regard to accomplice

37

liability were not only wrong but they were also confusing and inconsistent. We know, based on the jury's answers to the questions on the verdict form, that the jury found Toma guilty of the offense based on an accomplice theory of liability. By virtue of the circuit court's jury instruction, the jury could have found Toma guilty based on "another person, who [the jury] unanimously determine[d] to be an accomplice of [Toma]." The confusion created by the jury's misstatement of accomplice liability was particularly problematic in this case because of the conflicting testimony presented at trial and the numerous people involved in the fight. Given the nature of the circumstances of this case, the jury could have convicted Toma based on the conduct of one of the other employees of the nightclub, one of the mall security guards, or one of the people from the crowd surrounding the fight. Under the court's erroneous theory of accomplice liability, even if the jury believed Toma's testimony that he merely restrained the complaining witness and asked him to leave, the jury could still have found him guilty based on another person who committed the offense and was found to be "an accomplice of" Toma.

The defense, in objecting to the accomplice instruction, predicted that it would cause "utter confusion on the part of the jury." The record indicates that the jury was in

38

fact confused with regard to the accomplice instruction; the jury's only question for the court during its deliberations asked the court to "explain the accomplice policy."  The circuit court responded by referring the jury back to its written instructions, including its misstatement of accomplice liability.

Although the jury instructions also defined accomplice correctly, no curative instruction relating to the misstatement of the law on accomplice liability was given.  See State v. Espiritu, 117 Hawaiʻi 127, 143, 176 P.3d 885, 901 (2008) (holding that instructions given by the court correctly stating the law did not redress a prosecutor's misstatements of the law absent a specific curative instruction relating to the misstatements); see also Basham, 132 Hawaiʻi at 111, 319 P.3d at 1119 ("[W]hile the court properly instructed the jury on accomplice liability, that instruction did not cure the prosecutor's misstatements of the law, where no specific curative instruction relating to the misstatements was given.").

Further, the court's error was repeated in both the written jury instructions and the jury verdict form.[17]  As completed by the jury, the jury verdict form rejected a finding that Toma was a principal that committed the offense, and the

---

    [17]    The jury verdict form did not include the correct accomplice definition.

jury found Toma guilty under a theory of accomplice liability. It is uncertain whether the verdict was based on the correct theory of accomplice liability under HRS § 702-222 or on the court's unfounded, reverse-accomplice theory.

In light of the circuit court's uncorrected misstatement of the law and the jury verdict form indicating that the jury reached its guilty verdict on the accomplice liability instruction presented by the court, there is more than a reasonable possibility that the jury found Toma guilty under the circuit court's erroneous theory of accomplice liability. This is particularly true given the state of the evidence in this case, including the involvement of multiple actors.

Accordingly, the circuit court's instruction misstating accomplice liability adversely affected Toma's substantial rights and constituted plain error.[18] See Aganon, 97 Hawaiʻi at 303, 36

---

[18] Although Toma specifically objected to the court's flawed accomplice instruction at the circuit court because the instruction would create "utter confusion on the part of the jury" given that the complaining witness claimed he was assaulted at various locations by multiple unidentified people, his position before the ICA and this court was that no accomplice instruction should have been given at all. Thus, even though he objected to the jury instruction as confusing at trial, he did not assert on appeal that the instruction was flawed because it allowed the jury to convict him of the assault charge if the person who committed the assault was an accomplice of Toma. However, assuming arguendo that Toma did not preserve his objection for appeal to the giving of the flawed accomplice instruction by the court, its submission to the jury and its integration into the verdict form unquestionably demonstrates that the instructions were not correctly stated, and "the rule is that such erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial." State v. Eberly, 107 Hawaiʻi
(continued...)

P.3d at 1273 (finding plain error because "the jury could have found [defendant] guilty . . . even though it did not find the requisite state of mind" for each element of the offense based on the court's erroneous response to the jury); cf. Yamamoto, 98 Hawaiʻi at 219, 46 P.3d at 1103 (finding jury instructions were not harmless where the instruction deprived defendant of a possible defense and a reasonable possibility existed that the jury convicted defendant of something that did not even constitute a crime).

The error in this case arose from the circuit court's erroneous modification to the State's proposed instruction over the objection of the defense. This court confirmed that "[i]n our judicial system, the trial courts, not the parties, have the duty and ultimate responsibility to insure that juries are properly instructed on issues of criminal liability. Basham, 132 Hawaiʻi at 110, 319 P.3d at 1118 (quoting State v. Haanio, 94 Hawaiʻi 405, 415, 16 P.3d 246, 256 (2001)); State v. Kikuta, 125 Hawaiʻi 78, 90, 253 P.3d 639, 651 (2011) ("[I]t is the duty of the trial court to ensure that the jury is properly

---

[18](...continued)
239, 250, 112 P.3d 725, 736 (2005); see State v. Pinero, 75 Haw. 282, 291, 859 P.2d 1369, 1374 (1993) ("An appellate court presume that an instruction correctly stated the law if no objection to the allegedly erroneous instruction was made at trial." (emphasis added)).

instructed."); State v. Flores, 131 Hawaiʻi 43, 56, 314 P.3d 120, 133 (2013) ("[T]he trial courts, not the parties, have the duty and ultimate responsibility to insure that juries are properly instructed on issues of criminal liability.")

Consequently, in reviewing a flawed jury instruction, "we will vacate, without regard to whether timely objection was made, if there is a reasonable possibility that the error contributed to the defendant's conviction, i.e., that the erroneous jury instruction was not harmless beyond a reasonable doubt." State v. DeLeon, 131 Hawaiʻi 463, 480, 319 P.3d 382, 399 (2014) (quoting State v. Nichols, 111 Hawaiʻi 327, 141 P.3d 974 (2006).[19] As discussed, the jury instruction in this case misstated accomplice liability so that Toma could have been found guilty based on a theory of accomplice liability not recognized

---

[19] The plain error standard is also applied when the issue has not been raised to this court on appeal but the error affects substantial rights of the defendant. State v. Getz, 131 Hawaiʻi 19, 27, 313 P.3d 708, 716 (2013) (vacating and remanding for a new trial based on the circuit court's failure to give a specific unanimity decision although the defendant did not raise the lack of a specific unanimity instruction as a point of error on appeal); State v. Salas, SCWC-10-123 (Haw. Feb. 12, 2014) (mem.) (invoking plain error and vacating conviction and remanding for further proceedings where defense counsel failed to raise a lack of a specific unanimity instruction on appeal); see also State v. Staley, 91 Hawaiʻi 275, 286, 982 P.2d 904, 915 (1999) (addressing the violation of the defendant's right to testify as plain error although not raised by defense counsel on appeal); In Interest of Doe, 77 Hawaiʻi 46, 50, 881 P.2d 533, 537 (1994) ("Although Doe has not raised the family court's failure to explain the nature of assault as error with regard to her waiver of counsel, we may sua sponte notice plain error where it affects Doe's substantial rights."); State v. Fox, 70 Haw. 46, 55, 760 P.2d 670, 675 (1988) ("And we may notice 'plain error' even when 'not presented' by the appellant.").

by our law.  Given the fact that the jury specifically indicated on the verdict form that Toma was found guilty based on a theory of accomplice liability there is a reasonable possibility that the erroneous accomplice instruction contributed to Toma's conviction.  Thus, the flawed instruction was not harmless beyond a reasonable doubt.

In conclusion, the circuit court in this case modified the proposed jury instructions in a manner that misinformed the jury regarding the applicable criminal law and allowed the jury to convict him of a felony offense based upon conduct that is not a crime.  The erroneous instruction therefore affected Toma's substantial rights and denied him a fair trial.[20]

Accordingly, the circuit court's December 18, 2012 Judgment of Conviction of Probation Sentence is vacated, and this case is remanded to the circuit court for further proceedings.

DATED: Honolulu, Hawaiʻi, December 21, 2015.

Taryn R. Tomasa                        /s/ Mark E. Recktenwald
for defendant-appellant
                                       /s/ Sabrina S. McKenna
Brian R. Vincent
for plaintiff-appellee                 /s/ Richard W. Pollack



---

[20]    This court has repeatedly stated that it "will apply the plain error standard error of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights."  See, e.g., Nichols, 111 Hawaiʻi at 334, 141 P.3d at 981; see also DeLeon, 131 Hawaiʻi at 480, 319 P.3d at 399 (same); State v. Taylor, 130 Hawaiʻi 196, 205, 307 P.3d 1142, 1151 (2013) (same); State v. Walsh, 125 Hawaiʻi 271, 284, 260 P.3d 350, 363 (2011) (same); Kikuta, 125 Hawaiʻi at 95, 253 P.3d at 656 (same); State v. Sawyer, 88 Hawaiʻi 325, 330, 966 P.2d 637, 642 (1998) (same).